**Mr. and Mrs. John O. McKINSTRY et al., Appellants,**

v.

**Mrs. Marvin WELLS et al., Appellees.**

Court of Appeals of Kentucky.

March 4, 1977.

Harry B. Miller, Lexington, for appellants.

Victor Hellard, Jr., Rouse, Rouse & Hellard, Mark E. Gormley, Versailles, for appellees.

Before MARTIN, C. J., and PARK and VANCE, JJ.

PARK, Judge.

This is an appeal from a judgment of the Woodford Circuit Court directing the Woodford Fiscal Court to grant a zone map amendment in accordance with the recommendations of the Versailles-Midway-Woodford County Planning and Zoning Commission. The property in controversy is a tract of 100 acres situated approximately one mile north of Versailles on the Big Sink Pike. The appellants are the owners of property in the general vicinity who oppose the zone map amendment. The appellees are the owner of the property, Mrs. Marvin Wells, and developers holding options to purchase the tract. The fiscal court and its members are also appellees, not having appealed from the judgment of the Woodford Circuit Court.

The property is currently zoned for agricultural use (A-1). By the proposed map amendment, 11 acres could be zoned for single family estate sites (R-1-A) permitting the development of 11 one acre lots. By rezoning 58.8 acres to permit single family medium size lots (R-1-B), 187 lots could be developed having an average of 13,700 square feet. The proposed map amendment would rezone 7 acres to permit multifamily residential use (R-4). A neighborhood business use (B-1) would be authorized for 4 acres, and 3.8 acres would be designated as park use (CO-1). The remaining 15.4 acres would be included in dedicated streets.

The efforts to rezone the property have followed a long, complex and frustrating route before reaching this court. The appellees first sought a zone map amendment for the property in 1974. Following ap-

proval of the zone map amendment by the Versailles-Midway-Woodford County Planning and Zoning Commission and by the Woodford County Fiscal Court, suit was instituted in the Woodford Circuit Court by many of the same persons who are appellants on this appeal. On February 11, 1975, the Woodford Circuit Court entered a judgment invalidating the zone map amendment which rezoned the property from agricultural use to residential and business uses. The circuit court held that all parties had been denied due process because of the failure of both the Versailles-Midway-Woodford County Planning and Zoning Commission and the Woodford County Fiscal Court to make any findings of fact as required by KRS 100.213. The 1975 judgment of the Woodford Circuit Court was without prejudice to the right of the appellees to file a further application for rezoning of the property.

On February 19, 1975, the appellees filed a second application for a zone map amendment. The planning and zoning commission conducted trial-type hearings on March 13, March 24 and April 10, 1975. A record was made of these hearings. On May 8, 1975, the planning and zoning commission adopted nine pages of findings of fact and recommended to the fiscal court that the application for zone map amendment be approved. The entire record of the proceedings before the planning and zoning commission was forwarded to the fiscal court together with the recommendations of the commission.

The fiscal court elected not to have a trial-type public hearing. The fiscal court gave notice that it would decide the matter on the basis of the hearings before the planning and zoning commission. On July 26, 1975, a resolution to approve the recommendations of the planning and zoning commission and to adopt its findings of fact was defeated by a 5–3 vote of the members of the fiscal court. The fiscal court made no independent findings of fact and took no further action on the application for zone map amendment.

This action was instituted on August 20, 1975, by the appellees who are the owner and proposed developers of the 100 acre tract. Relying on the decision in *City of Louisville v. McDonald,* Ky., 470 S.W.2d 173 (1971), the circuit court held that the fiscal court acted arbitrarily when it rejected the recommendations of the planning and zoning commission without making any findings of fact. The circuit court then directed the fiscal court to amend the zone map in accordance with the recommendations of the planning and zoning commission. Two issues are raised by the appeal. First, was the circuit court correct in holding that the fiscal court was arbitrary and denied procedural due process when it rejected the findings and recommendations of the planning and zoning commission without making independent findings of fact of its own? Second, assuming that the circuit court was correct in holding the action of the fiscal court to be arbitrary, was the circuit court correct in directing the fiscal court to grant the application for zone map amendment as recommended by the planning and zoning commission? Both issues must be decided by reference to the comprehensive plan adopted for Woodford County.

■ Before any map amendment can be granted, KRS 100.213 requires the planning commission or appropriate legislative body to make one of the following findings: (1) that the map amendment is in agreement with the community's comprehensive plan; (2) that the original zoning classification given to the property was inappropriate or improper; or (3) that there have been major changes of an economic, physical or social nature within the area involved which were not anticipated in the community's comprehensive plan and which have substantially altered the basic character of the area. Under KRS 100.187(2), a comprehensive plan must contain a land use plan element. This statute further provides:

"A land use plan element * * * shall show proposals for the most appropriate, economic, desirable and feasible patterns for the general location, character, extent, and interrelationship of the manner in which the community should use its public and private land at specified times

as far into the future as is reasonable to foresee. Such land uses may cover, without being limited to, public and private, residential, commercial, industrial, agricultural and recreational land uses."

In determining whether a proposed map amendment is in agreement with the community's comprehensive plan, the land use plan element is not the only portion of the comprehensive plan which need be consulted. Nevertheless, the classification of the property under the land use plan is the prime consideration in determining whether the map amendment is in agreement with the comprehensive plan. *Hines v. Pinchback-Halloran Volkswagen,* Ky., 513 S.W.2d 492 (1974).

The comprehensive plan adopted by the Versailles-Midway-Woodford County Planning and Zoning Commission contained a land use plan element. The portion of the land use plan relating to residential use provides:

"Growth Areas—Residential growth during the planning period will occur in the general direction that growth has taken during the past ten to fifteen years. Residential growth is anticipated to the southwest of Versailles between U.S. 62 and McCowans Ferry Road; to the west and east of Nicholasville Road near the southern boundary of Versailles and to the north and south of U.S. 60 just to the east of the bypass.

\* \* \* \* \* \*

"Little residential growth is anticipated to the north, northwest, and west of Versailles. The industrial complex along the U.S. 60 bypass will tend to block residential growth to the north and northeast; the topography to the north and west makes the extension of sanitary sewers into these areas costly, in comparison to other potential residential areas, and steep and low areas will hinder the development in this direction."

The 100 acre tract in question is located north of the U.S. 60 bypass. On the map included in the comprehensive plan to illustrate the land use plan, a very small portion of the 100 acre tract is designated for future industrial use, the remainder of the tract being reserved for continued agricultural use.

In the application for zone map amendment, the owner and proposed developers asserted that the proposed rezoning was consistent with the "general objectives" of the comprehensive plan. Nevertheless, the application on its face conceded that only a portion of the 100 acre tract was within "the projected area of development in the land use and transportation plan map." In its findings, the planning and zoning commission made two general findings which it undertook to support by specific findings of fact. First, the planning and zoning commission found "that there have been major changes of an economic, physical or social nature within the area involved which were not anticipated in the community's comprehensive plan and which have substantially altered the basic character of such area." Under KRS 100.213, there would be no need for the planning and zoning commission to have made this general finding unless the proposed map amendment was *not* in agreement with the comprehensive plan. In its second general area of findings, the planning and zoning commission found that the application for zone change was in agreement with the comprehensive plan in nine specific areas.

The facts of this case are very similar to those in the leading case in this area of zoning law, *City of Louisville v. McDonald,* Ky., 470 S.W.2d 173 (1971). The owner and proposed developer of a tract of land situated in the City of Louisville sought a zone map amendment. The planning and zoning commission held a public hearing at which evidence was heard. A transcript was made of the proceedings at the hearing. The planning and zoning commission made factual findings in support of its conclusion that there had been major changes of an economic nature within the area involved which were not anticipated in the comprehensive plan and which had substantially altered the basic character of the area. The planning and zoning commission recommended to the board of aldermen of the city

that the application for zone map amendment be approved. As in this case, the legislative body refused any rezoning of the property but did not hold its own trial-type hearing. When the action of the board of aldermen was challenged in the circuit court, the circuit court declared the action of the board of aldermen to be arbitrary and a denial of due process to the property owner. The circuit court further directed the board of aldermen to rezone the property for the particular classification sought by the property owner.

In the *McDonald* case, the Court of 'Appeals held that a property owner seeking a zone map amendment was entitled to procedural due process. The Court of Appeals further held that the legislative body has three alternatives if the planning and zoning commission conducts a trial-type due process hearing and makes factual findings in support of its recommendation. First, the legislative body may follow the commission's recommendation without a hearing or only an argument-type hearing. Second, the legislative body may review the record made before the commission and determine from that evidence adjudicative facts which differ from those found by the commission. Third, the legislative body may hold its own trial-type hearing and, based upon the evidence presented at that hearing, find different adjudicative facts than those found by the commission.

In the *McDonald* case, the Court of Appeals held that the board of aldermen acted arbitrarily when it refused to follow the recommendations of the planning and zoning commission without making any finding of adjudicative facts. The Court of Appeals stated:

"In the case before us, the legislative body acted arbitrarily. There was no trial-type due process hearing before it. The adjudicative facts found by the zoning commission do not support the legislative body's decision. The legislative body did not undertake to afford due process and find different adjudicative facts. Therefore, the circuit court correctly adjudged that the action of the board of

aldermen was arbitrary and in this respect, the judgment is affirmed." *Id.* at 179.

In this case, the Woodford Fiscal Court conducted no trial-type due process hearing. The adjudicative facts found by the planning and zoning commission do not support the decision of the fiscal court. The fiscal court did not undertake to find different adjudicative facts than those found by the planning and zoning commission.

The appellants argue that the comprehensive plan adopted by the planning and zoning commission constitutes the community's "findings of fact" and that the comprehensive plan for Woodford County contains sufficient factual findings to support the action of the fiscal court. This argument fails to recognize the difference between adjudicative facts and legislative facts. As stated by Professor Davis:

"Adjudicative facts are the facts about the parties and their activities, businesses, and properties. Adjudicative facts usually answer the question of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kinds of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion." 1 K. Davis *Administrative Law Treatise*, § 7.02, p. 413 (1958).

The enactment of a comprehensive plan is based upon a finding of legislative facts. A comprehensive plan has general application throughout the community and the facts to be considered do not relate as such to a particular individual or the status of his property. However, when determining whether to grant a zone map amendment, the legislative body must decide whether an individual because of his own particular factual situation is or is not entitled to some form of relief. In such cases, there must be a finding of adjudicative facts. See *City of Louisville v. McDonald, supra,* at 177–78. A legislative body is not governed by judicial standards in making findings of legislative facts. Therefore, findings of legisla-

tive facts cannot be a substitute for findings of adjudicative facts which due process requires be made in deciding a request for zone map amendment. cf. *Young v. Neale,* Ky., 457 S.W.2d 358 (1969).

The appellants assert that the holding in the *McDonald* case has been modified by the later decisions in *Montfort v. Archer,* Ky., 477 S.W.2d 144 (1971); *Hays v. City of Winchester,* Ky., 495 S.W.2d 768 (1973); and *Edlin v. Fiscal Court of Jefferson County,* Ky., 497 S.W.2d 229 (1973). The appellants would construe these three cases to hold that a fiscal court is required to make findings of adjudicative facts only if it *grants* a zone map amendment. The three cases cited extend, rather than limit, the holding of the *McDonald* case. If the legislative body does not follow the recommendations of the planning and zoning commission, the legislative body must make its own findings of adjudicative facts. Any decision to grant or deny an application for zone map amendment must be supported by a finding of adjudicative facts.

■ In this case, the Woodford Fiscal Court declined to follow the recommendations of the planning and zoning commission. The fiscal court made no findings of adjudicative facts. The action of the fiscal court was clearly arbitrary, and that portion of the judgment of the circuit court so declaring must be affirmed.

■ In addition to holding the action of the fiscal court to be arbitrary, the circuit court directed the fiscal court to grant the zone map amendment as recommended by the planning and zoning commission. In the *McDonald* case, the Court of Appeals held such action by the circuit court to be erroneous. The circuit court had no authority to direct that the property be rezoned for the particular classification recommended by the zoning commission. The circuit court should have directed the fiscal court to make the findings of adjudicative facts necessary for judicial review. The *McDonald* opinion emphasizes that the ultimate decision on a zone map amendment must be by the legislative body. Even if it should be finally determined that a refusal

by the fiscal court to change the classification of the 100 acre tract from A-1 was arbitrary, it would not follow that the courts could direct the particular classification to be applied to the property. At most, the fiscal court could be ordered to classify the property under some classification other than A-1. *Taylor v. Coblin,* Ky., 461 S.W.2d 78 (1970). Mandamus will issue to compel a fiscal court to act by exercising a discretionary duty, but mandamus will not be used to control the fiscal court's discretion by directing that it be exercised in any particular way. *Akins v. Peak,* 239 Ky. 847, 40 S.W.2d 324 (1931); *Kaufman v. Humphrey,* Ky., 329 S.W.2d 575 (1959).

The appellees contend that the remedy imposed by the circuit court is supported by the decision in *City of Louisville v. Kavanaugh,* Ky., 495 S.W.2d 502 (1973). In that case, the property owners sought a map amendment for a tract which was zoned for single family residential use (R-5). According to the comprehensive plan, the property was to be developed for multifamily apartment use (R-6). The property owners sought to have the property rezoned for high density multifamily use (R-7). After a hearing, the planning and zoning commission recommended that the application for rezoning to high density multifamily use (R-7) be denied. However, the planning and zoning commission did recommend that a map amendment be approved which would reclassify the property for multifamily apartment use (R-6) as shown in the comprehensive plan. The legislative body refused to make any change in the zoning classification of the property. The circuit court held the action of the legislative body to be arbitrary and directed the legislative body to grant a zone map amendment reclassifying the property for multifamily apartment use (R-6).

On appeal, the Court of Appeals affirmed. Both the comprehensive plan and the record in the case established that the original R-5 zoning classification was erroneous. The court stated:

"If there is some question concerning the possible assignment of a zoning category

other than R-6 that would entail administrative or legislative discretion we would have to characterize the action of the circuit judge in directing assignment of the R-6 category as erroneous, but in this instance we are not presented with that situation." *Id.* at 505.

The Court of Appeals pointed out that the comprehensive plan provided for an R-6 designation, that the planning commission recommended an R-6 zone classification, that the owners of the property were willing to accept an R-6 classification, and that no evidence was presented before either the planning and zoning commission or the legislative body which would support a finding that any zone classification would be more appropriate than R-6. Consequently, the circuit judge made no de novo determination between possible alternative classifications.

In the present case, the appellees seek a combination of R-1-A, R-1-B, R-4, CO-1 and B-1 zoning. The land use element of the comprehensive plan does not provide that the property should be developed under any of these zoning classifications. Even if it would be appropriate to grant a zone map amendment for this property, it is apparent that the particular zone classification for each particular area of the 100 acre tract calls for administrative and legislative discretion. Consequently, the action of the circuit court is not supported by the decision in the *Kavanaugh* case, and it violates the rule laid down in the *McDonald* case. It was error for the circuit court to direct the fiscal court to grant the specific zone map amendments recommended by the planning and zoning commission, and that portion of the judgment of the circuit court is reversed.

On remand, the circuit court should enter judgment directing the fiscal court to adopt one of the following alternatives: (1) to follow the recommendations of the planning and zoning commission; (2) to review the record made before the planning and zoning commission and to make its own finding of adjudicative facts from that record; or (3) to hold its own trial-type hearing and make a finding of adjudicative facts. In order that the parties may receive a final resolution of this matter, the circuit court may impose a reasonable time limit within which the fiscal court must act. The circuit court may enforce its order by all of the appropriate powers of an equity court.

The judgment of the circuit court is affirmed in part and reversed in part, with directions to enter a new judgment in accordance with this opinion.

All concur.