Mrs. Anthony J. A. BRYAN, Mr. and Mrs. John W. Greathouse, Sidney N. Remmele, D. V. M., Mr. Ben P. Walden, Parrish-Walden Corporation, and William W. Lockridge, D. V. M., Appellants,

v.

SALMON CORPORATION, White, Range & Range, Inc., Owen L. Range, Agent for White, Range & Range, Inc., and Salmon Corporation, Woodford County Fiscal Court, Woodford County, Kentucky, Matt T. Blackard, Woodford County Judge, Harold Carmickle, James L. Moore, Jr., Carl Whalen, Richard Devers, Vernon T. Howard, Charles F. Smith, Lewis H. McDannold, as Members of the Woodford County Fiscal Court, Appellees.

Court of Appeals of Kentucky.

Aug. 12, 1977.

Taft A. McKinstry, Thomas E. Harris, Fowler, Rouse, Measle & Bell, Lexington, for appellants.

C. Richard Doyle, Gess, Mattingly, Saunier & Atchison, Lexington, Mark E. Gormley, Versailles, for appellees.

Before HOWERTON, GANT and HOGGE, JJ.

HOWERTON, Judge.

This is an appeal from a judgment of the Woodford Circuit Court requiring the Woodford County Fiscal Court to grant a zone map change. The appellants are property owners who object to the zone change and who were intervening defendants in the circuit court. The fiscal court and its members are named as appellees, along with the property owners who had originally requested the amendment. However, it appears that Clay Waite has been omitted by the appellants as an appellee. Mr. Waite is also a member of the fiscal court, chairman of the court's planning and zoning committee, and the individual who testified by deposition for the circuit court proceeding regarding the manner by which the fiscal court made its own findings. Mr. Waite was a defendant in the action in the circuit court.

The property in question consists of 28.3 acres located at the northern boundary of the corporate limits of the city of Versailles, Kentucky, and adjacent to Merewood Subdivision. The property is bounded on the northwest by U.S. Highway 62, where it fronts 602 feet across from the Pin Oak Farm. The Pin Oak Farm is zoned and used for agricultural purposes and is the only property owned by any appellant in the vicinity of the property to be rezoned. The property is bounded on the southwest by Unit 3–D of Merewood Subdivision,

which is zoned for single family residential uses and which is completely developed with streets and homes. The 28.3 acres is bounded on the northeast and southeast by Mereworth Farm, which is owned by the appellee Salmon Corporation and which is zoned and used for agricultural purposes. It has been proposed that the subject property be developed as a residential subdivision as an extension to the existing Merewood Subdivision.

The 28.3 acres was zoned for agricultural uses (A–1) at the time the zone change application was filed. A 500 ft. strip of the property adjacent to U.S. 62 was also classified as "Old and Historic Residential-1" (OHR–1). Furthermore, approximately 10 acres of the southeastern portion of the subject property is within an area which was proposed for residential development in the Comprehensive Plan for Woodford County. It is only the center section of the 28.3 acres that was originally conceived to remain in an agricultural use. Since the comprehensive plan was prepared, the residential growth in the county has occurred in the general area of the property involved in this litigation. In 1973, Unit 3 of Merewood Subdivision was rezoned and then developed as a residential subdivision. When Unit 3 was added to the subdivision, drainage facilities within the area were sized to accommodate storm water from the adjoining property and water and sanitary sewers were also extended to the property in question. Contrary to the original land use plan for the county, the pressure for residential growth has been to the northern side of Versailles, rather than to the south and southwest of Versailles.

The planning and zoning commission conducted a trial type public hearing on April 10, 1975 and complied in full with the requirements for due process. The commission found that there had been major changes of an economic, social or physical nature within the area involved which were not anticipated in the community's comprehensive plan and which have substantially altered the basic character of the area. That finding was based in part upon the facts heretofore set out. The commission also found that the application for a zone change from A–1 to "Low Density, Single Family Residential" (R–1) was in agreement with the comprehensive plan because urban services and utilities could be feasibly extended to serve the property; because the proposed development would assist in satisfying the anticipated requirements for 344 acres of additional residential land; and, because the comprehensive plan, and particularly the land use map, indicate that approximately 50 percent of the land in question was already designated for residential use. The planning and zoning commission therefore recommended approval of the zoning change to the Woodford County Fiscal Court.

On July 26, 1975, a resolution was presented to the Woodford County Fiscal Court to approve the recommendation of the planning and zoning commission. The resolution was defeated by a vote of 5 to 3. Pursuant to a request to reconsider, the fiscal court again declined to adopt the recommended change and adopted its own findings of fact without an additional hearing or submission of evidence. The property owners seeking the zone change appealed to the Woodford Circuit Court.

The circuit court reviewed the entire record, as compiled by the planning commission and the fiscal court, together with the deposition of a member of the fiscal court regarding the manner of review and the consideration, or lack of it, given to the recommended zone change. The circuit court found that the requested rezoning was in substantial compliance with the comprehensive plan of Woodford County; that the existing zoning classification was no longer appropriate because of growth trends in the area; that the growth in the area of the subject property was not anticipated by the comprehensive plan which anticipated more residential growth in other parts of Woodford County, and that the availability of urban services and roads in and around the property reinforced the conclusion that there was a compelling need for the rezoning. The circuit court therefore declared that the action of the Wood-

ford County Fiscal Court, in denying the requested zone change, was arbitrary, and ordered that the fiscal court amend the official zoning map accordingly. The order and judgment were entered on September 20, 1976.

The order of the circuit court did not specify a particular zone for reclassification, but on November 13, 1976, the fiscal court rezoned the property in question to R–1, which is the most restrictive classification available for change, and which was the classification requested by the applicants. The Notice of Appeal was filed on November 24, 1976. The action taken by the fiscal court on November 13, 1976, is not a part of the official record and file in this case, but it is a given fact in the briefs of the appellants and the appellees.

The issues presented to us in this case are basically the same as those recently decided by this Court in *McKinstry v. Wells*, Ky.App., 548 S.W.2d 169 (1977). The questions are whether or not the circuit court was correct in holding that the fiscal court acted arbitrarily when it rejected the recommendations of the planning and zoning commission, and whether or not the circuit court was correct in directing the fiscal court to approve a zone map amendment.

In *McKinstry, supra,* this Court held that the circuit court correctly found that the fiscal court acted arbitrarily in rejecting the recommendations of the planning commission, but reversed the circuit court for going too far by ordering the fiscal court to change 100 acres of A–1 zoned property to a combination of R–1, R–4, CO–1 and B–1 zoning. This Court instructed the circuit court to direct the fiscal court to comply with one of the following alternatives: (1) To follow the recommendation of the planning and zoning commission; (2) To review the record made before the planning and zoning commission and make its own findings of adjudicative facts from that record; or, (3) To hold a trial type hearing and make a finding of adjudicative facts. The opinion in *McKinstry* provides an excellent summary of the Kentucky law as it relates to zone map amendments, and it provides

an interpretation of such significant statutes and cases, as KRS 100.213; *City of Louisville v. McDonald*, Ky., 470 S.W.2d 173 (1971); and, *City of Louisville v. Kavanaugh*, Ky., 495 S.W.2d 502 (1973), which are dispositive also of the issues in this action.

We are presented with some factual differences, however, and these must be considered. The zoning change recommendations in *McKinstry* not only came from the same planning and zoning commission, as did the recommendations in this action, but also, they were rejected by the same fiscal court on the same day. There are two major differences that distinguish this case from the *McKinstry* case. First, the fiscal court did make its own findings of fact during a reconsideration of this proposal at the request of the attorney for the applicants. The second basic difference is that the requested zone change in this action was for a single change and from an agricultural zone to the most restrictive "Low Density, Single Family Residential" zone. Also, for various reasons, the proposed change was found by the planning commission and the circuit court to be in compliance with the comprehensive plan.

In *McDonald, supra,* the Court indicated that procedural due process required a legislative body to do one of the three things which were ordered in the *McKinstry* case as hereinbefore described. The Woodford County Fiscal Court had not complied with any of the procedural requirements in the *McKinstry* case, and this Court had no problem in determining that its action was arbitrary, as had been found by the circuit court. In this case, the fiscal court did, ultimately, make its own findings of fact, and we must consider these findings before agreeing or disagreeing with the conclusion of the circuit court that the fiscal court had acted arbitrarily.

We have reviewed the entire record and conclude that the circuit court correctly found the action of the fiscal court to be arbitrary. The judge had the record of the planning commission, the findings of the fiscal court and the deposition of Clay

Waite, a member of the fiscal court. It is apparent from the testimony of Mr. Waite that the members of the fiscal court were unfamiliar with the record of the planning and zoning commission. The findings of the fiscal court could not have been based upon an actual review of such record. The evidence also indicated a question as to how and why the findings of fact were prepared for the fiscal court and subsequently made a part of the record.

The findings themselves fall into one of three categories, none of which would have justified rejecting the recommendation of the planning commission. A total of fifteen specific findings were incorporated by reference into the minutes of the fiscal court. We have reviewed all of them in relationship to the record and the applicable law as found in *McDonald* and *Kavanaugh, supra,* and KRS 100.213, as well as *McKinstry, supra.* We will not list each finding in detail, but will summarize the situation as follows: Findings # 1, 2, 3, and 13 are supported by the evidence, but none constitute reasons for denying the recommended change. Finding # 13, for example, concluded that the comprehensive plan was appropriate when adopted. Findings # 4–14 (except # 13) are either not supported by the evidence in the record, or they would have to be classified as legislative facts rather than adjudicative facts (see, *McKinstry,* 548 S.W.2d at p. 173), or they are otherwise irrelevant to a zoning change. The findings related to such items as traffic, surface water, a possible "green belt" some day, the incompatibility of children and dogs with agricultural uses, conserving values of surrounding property, pressure for future changes, and the error of a prior change. Finding # 11 concluded that the property to be rezoned was beyond the "logical cut-off point in the original comprehensive plan". Does a "logical cut-off point" in a comprehensive plan remain applicable when one demonstrates that a specific parcel of property justifiably needs relief from the plan? We think not.

Finding # 15 contained the ultimate finding that there had been no changes in the area of an economic, social or physical nature which were not anticipated in the original comprehensive plan. This conclusion totally ignores the evidence in the record. The circuit judge was clearly justified in concluding that even though the fiscal court had attempted to comply with due process requirements by adopting findings of fact, that it had nevertheless acted arbitrarily and improperly. The circuit court was also justified in making its own findings and conclusions which reaffirmed the planning and zoning commission and added an additional finding that a compelling need existed for the rezoning. The opinion of the circuit court was supported by the record and was not clearly erroneous.

We now turn to the question of whether or not the circuit court properly disposed of the case by ordering the fiscal court to rezone the property.

Before a zone map may be amended, KRS 100.213 requires a planning commission or the legislative body having jurisdiction over the matter to make one of the following findings: (1) That the map amendment is in agreement with the community's comprehensive plan; (2) That the original zoning classification given to the property was inappropriate or improper; or (3) That there have been major changes of an economic, physical or social nature within the area involved which were not anticipated in the community's comprehensive plan and which have substantially altered the basic character of the area. The planning commission found items (1) and (3) of the aforesaid requirements to be appropriate.

The major changes which had not been anticipated when the plan was adopted were the amount of growth in the vicinity, the demand for additional single family housing, and the development of Unit 3 of Merewood Subdivision with the sizing and extension of storm and sanitary sewers to the property in question. Agreement with the plan was found in the fact that approximately 50% of the 28 acres was designated for residential uses. Other appropriate factors were that the concept of contiguous

development and extension of urban services in urban areas would be consistent with the energy conservation requirements and objectives set forth in the comprehensive plan. Also, the plan indicated that additional housing would be required in the same general directions as housing had been developed in the past and that approximately 344 acres of additional housing would need to be developed.

■ The comprehensive plan is extremely important, and it must not be treated lightly or ignored in considering applications for zone changes. It is a plan for the orderly growth of an area, and property owners must be able to rely on it when making investments in real estate and for the protection of land values. But, a comprehensive plan is a "guide rather than a strait-jacket". *Ward v. Knippenberg*, Ky., 416 S.W.2d 746 (1967).

■ KRS 100.213 provides for a change if one of the three situations is found to exist. In this case, two of the criteria appear to have been met. What is satisfactory to meet the requirements must be a value judgment based on the facts of each case within the framework of the statutes and the appropriate decisions and interpretations rendered by the court.

In *Kavanaugh, supra,* the Court affirmed an order of the circuit court requiring the Louisville Board of Aldermen to rezone property from R–5, single family, to R–6, multi-family. The requested change had been found to be in compliance with the comprehensive plan which called for the area to be used for multi-family residential purposes. Even though rezoning is a legislative matter rather than a judicial one, the order in *Kavanaugh* was not considered to be a de novo determination that the property must be rezoned in a particular manner. The circuit judge merely pronounced the result that the record required. (*Supra* at p. 506) The change was to the next and most restrictive multi-family classification. The circuit court had found a compelling need for the rezoning, as had been required in *McDonald, supra.*

We have the same general situation in this case. The circuit judge found a compelling need to rezone the property, and that the legislative body had arbitrarily refused to rezone the property according to the recommendation of the planning commission. The R–1 zone was the next and most restrictive zone. There may be a question relating to the finding of agreement between the comprehensive plan and the new zone, especially since the land use portion of the plan shows only 50% of the tract as being designated for residential use. The other portions of the plan may be, and were, considered in determining the necessary agreement. The statute does not specify what must be or limit what may be considered.

■ In addition, however, both the planning commission and the circuit court found that there had been economic, physical and social changes which had not been anticipated when the comprehensive plan was prepared. The changes found by the court dictated the compelling need. What is a "compelling need" must also be determined by the circumstances of each case. *McDonald, supra; Fiscal Court of Jefferson County v. Stallings*, Ky., 515 S.W.2d 234 (1974); *City of Bowling Green v. Hunt*, Ky., 516 S.W.2d 647 (1974); and, *Kavanaugh, supra.* Here we have a housing shortage, a feasible way to extend urban services, and a demand for housing in the area.

■ We find the factual situation in this case to be distinguishable from the situation in *McKinstry, supra.* The circuit court had the authority to require a rezoning under the authority of *Kavanaugh.*

We find no reversible error and therefore affirm the opinion and order of the circuit court.

ALL CONCUR.