John R. FRITZ; Mary Louise McConathy Fritz; Bettie Fritz Graves; Alfred J. Graves; and Bellerive Development Corp., a Kentucky Corporation, Appellants,

v.

LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT; Lexington–Fayette Urban County Council; Teresa Ann Isaac, vice mayor, Charles W. Ellinger, D.D.S., David B. Stevens, M.D., George A. Brown, Jr., Robert R. Jefferson, Kathy Pratt, Isabel Yates, Fernita Wallace, Bobby Flynn, Willy Fogle, Fred V. Brown, Roy Durbin, Sandy Shafer, Jack E. Hillard, and Gloria Martin, in their official capacity as individual members of the Lexington–Fayette Urban County Council; Pam Miller, in her official capacity as Mayor of the Government; Lexington-Fayette Urban County Planning Commission; Walter W. May, Chairman, Eugene Ballentine, Dr. Thomas M. Cooper, Sarah Gregg, Dallam B. Harper, Jr., Robert D. Kelly, George L. Logan, Rose M. Lucas, Dwight Price, Don Robinson, and Leslie Patterson Vose, in their official capacity as members of the Lexington–Fayette Urban County Planning Commission, Appellees.

No. 97–CA–002214–MR.

Court of Appeals of Kentucky.

Sept. 4, 1998.

Discretionary Review Denied by Supreme Court March 17, 1999.

William M. Lear, Jr., Rena G. Wiseman, Lexington, for Appellants.

Edward W. Gardner, Chris Westover, Lexington, for Appellee.

Before EMBERTON, GARDNER, and SCHRODER, Judges.

*OPINION*

SCHRODER, Judge.

This is a planning and zoning case which alleges error in denying a zone change request which was not in accordance with the comprehensive plan of the Lexington–Fayette Urban County Government. Appellants urge a compelling need for their request and major unanticipated changes in the area.

The appellants filed an application in 1995 to rezone approximately 10 acres of land, located on the southeast corner of the intersection of Wilson–Downing Road and Nicholasville Road, from R–1C (single family residential) to B–6P (planned shopping center). The proposed development is adjacent to an existing residential neighborhood to the east and is residential/agricultural to the south. Across Wilson–Downing Road to the north, the land is also residential. On the land directly across Nicholasville Road, a major arterial highway, from the proposed development sits the Fayette Mall.

The 1988 Lexington–Fayette Urban County Comprehensive Plan (comprehensive plan) recommends that the appellants' property be zoned for high density residential use. The comprehensive plan also recommends resi-

dential uses all along the east side of Nicholasville Road, (two miles), from just south of Reynolds Road to the county line. The west side of Nicholasville Road is developed with the Fayette Mall and designated in the comprehensive plan as a commercial corridor. Nicholasville Road is designated as the dividing line between the residential uses on the east and the commercial uses on the west.

The Planning Commission conducted a public hearing on September 28, 1995 and found the zone change request was in disagreement with the comprehensive plan, voting 8–0 to disapprove the change. The Lexington–Fayette Urban County Government held a de novo public hearing on December 12, 1995 and voted 14 to 0 to deny the zone change. The circuit court affirmed on August 5, 1997 and appellants appealed, contending the council's refusal to rezone was arbitrary because the council refused to follow *City of Louisville v. McDonald, infra;* the expansion of the Fayette Mall was a major unanticipated change to the comprehensive plan; and the comprehensive plan was not timely updated as mandated by KRS 100.197. The appellants also contend that the record requires that the property be rezoned as requested.

■ Appellants contend the council's refusal to rezone is arbitrary under *City of Louisville v. McDonald,* Ky., 470 S.W.2d 173 (1971), in that the evidence clearly demonstrates that the existing R–1C zoning is inappropriate and that the Fayette Mall expansion was a major unanticipated change to the comprehensive plan. Under *City of Louisville v. McDonald, supra,* when the legislative body denies the requested change, the property owner must show the decision was "arbitrary," and whether an action is arbitrary depends on whether the proponents of change can show "[n]o rational connection between that action and the purpose for which the body's power to act exists." *Id.* at 178. The question then becomes "[w]hether or not the evidence shows a compelling need for the rezoning sought or clearly demonstrates that the existing zoning is no longer appropriate." *Id.* at 179. *McDonald, supra,* establishes what a property owner needs to show in order to be entitled to a zone change.

KRS 100.213 goes further than *McDonald, supra,* and adds that in order to get the *requested* zone change, the proponent must also show that the *proposed* zoning classification is appropriate. Appellants cannot read *McDonald* in a vacuum.

■ All zoning is mandated to follow the comprehensive plan. KRS 100.201 and KRS 100.213(1)(a) and (b). KRS 100.213 provides that before a zone change request is granted, (map amendment), the planning commission or respective legislative body must find either that the request is in agreement with the comprehensive plan *or* that the existing zoning classification is inappropriate *and* that the *proposed* zoning classification is appropriate; or that there have been major changes of an economic, physical, or social nature in the area which were not anticipated in the current comprehensive plan and which *substantially* alter the character of the area.

■ The planning commission and the legislative body each conducted a public hearing to consider the request. Evidence was introduced by both sides. Much of the evidence was conflicting, which meant a judgment call had to be made in order to make findings of fact. In *Kaelin v. City of Louisville,* Ky., 643 S.W.2d 590 (1982), our Supreme Court labeled zoning change requests as trial-type hearings for the purpose of determining the adjudicative facts necessary to decide whether or not to grant the zone change. As such, the taking and weighing of evidence is necessary with "[a] finding of fact based upon an evaluation of the evidence and conclusions supported by substantial evidence." *Id.* at 591. The circuit court's review is authorized by KRS 100.347 and *American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission,* Ky., 379 S.W.2d 450 (1964). The question on review is whether the administrative agency's decision is supported by substantial evidence; otherwise it's classified as arbitrary. *Id.* at 456. In *Danville–Boyle County Planning and Zoning Commission v. Prall,* Ky., 840 S.W.2d 205 (1992), our Supreme Court held that in planning and zoning cases, the property owner has the burden of proof, and judicial review is limited to the question of whether the administrative deci-

sion was arbitrary. "By arbitrary we mean clearly erroneous and by clearly erroneous we mean unsupported by substantial evidence." *Id.* at 208.

Using these standards of review, was the decision to deny the *requested* zone change arbitrary? We agree with the circuit court that it was not. The existing R–1C zoning classification may be inappropriate, but there is no finding that the comprehensive plan's recommended high density residential zoning classification is inappropriate. *See Landgrave v. Watson,* Ky.App., 593 S.W.2d 875 (1979). From a planning point of view, those are consistent findings, especially in a transitional area, which this is. The R–1C zoning reflects the existing single family uses, but the comprehensive plan recognizes the site is more suitable for high density residential and the need for a buffer or transition between the commercial on the west side of Nicholasville Road and the residential on the east side of Nicholasville Road.

■ Chapter 100 of the Kentucky Revised Statutes mandates that the planning commission prepare a "comprehensive" plan which serves as a guide for public and private development in the most appropriate manner. KRS 100.193. This master plan for an area is comprehensive in that numerous and extensive elements or studies are to be considered in formulating and adopting the plan. KRS 100.187. By nature, a comprehensive plan speaks to future development even though it takes into consideration the current land uses. The comprehensive plan as here can include a current land-use plan or map which the legislative body can zone appropriately. KRS 100.201, 100.203. The comprehensive plan, however, looks beyond current uses, to the future, and is constantly undergoing review. KRS 100.197. Zoning changes are allowed if they are in accordance with the comprehensive plan, KRS 100.213, or if the plan is out of touch with reality, KRS 100.213(1)(a) & (b); *Wells v. Fiscal Court of Jefferson County,* Ky., 457 S.W.2d 498 (1970), and there is a compelling need for the proposed change. *McDonald, supra;* and KRS 100.213.

Was the Fayette Mall expansion a major unanticipated change to the comprehensive plan which would render the commission's and council's decision arbitrary? The phrase, "major unanticipated change," is relative. To the appellants directly across Nicholasville Road, the new McAlpins store is surely a major *local* change. However, it does not necessarily follow that it would totally wipe out the commercial corridor concept or the use of Nicholasville Road as the dividing line between the commercial property on the west and residential on the east. It could have, but with evidence presented both ways, the triers of fact made their findings that the unanticipated expansion of the Fayette Mall did not *substantially* alter the character of the *area, see Wells v. Fiscal Court of Jefferson County, supra,* and we are of the opinion that these findings are not arbitrary, as discussed above.

■ Does the failure to timely update the comprehensive plan render decisions that relied thereon arbitrary? The appellants are correct when they cite KRS 100.197 for requiring continuing review and updates of the comprehensive plan and strict compliance with the statutes. *See Bellefonte Land Inc. v. Bellefonte, Ky.,* Ky.App., 864 S.W.2d 315 (1993). In the scheme of planning and zoning, the General Assembly adopted KRS 100.197, which recognizes that our society is constantly changing. It requires review and updates or amendments at least every five years for "social, economic, technical, and physical advancements or changes." However, in the event the planning commission and/or legislative body do not timely review the plan, it does not become inapplicable or arbitrary as a matter of law. KRS 100.197(2) provides the consequences for failure to timely update:

> ... If the review is not performed, any property owner in the planning unit may file suit in the Circuit Court. If the Circuit Court finds that the review has not been performed, it shall order the planning commission, or the legislative body in the case of the statement of goals and objectives element, to perform the review, and it may set a schedule or deadline of not less than nine (9) months for the completion of the review. No comprehensive plan shall be declared invalid by the Circuit Court

unless the planning commission fails to perform the review according to the court's schedule or deadline. The procedure set forth in this section shall be the exclusive remedy for failure to perform the review.

We agree with the circuit court that even if the comprehensive plan has not been timely updated, that does not make the refusal to rezone arbitrary. Also, the court did find that the Tischler–Marcou economic study was updated by Mark Guindon.

Finally, appellants argue that the record compels that the property be rezoned as requested, that by reviewing the entire record, we would see that not only was the council's refusal to rezone arbitrary, but that no category other than the B–6P zoning would be appropriate for the property in question. Appellants cite our opinion in *Bryan v. Salmon Corporation*, Ky. App., 554 S.W.2d 912 (1977). The definition of a "compelling need" for a zone map change reflects the requirements of KRS 100.213, that the amendment be in agreement with the comprehensive plan or that there have been major economic, physical, or social changes not anticipated which substantially alter the basic character of the area. A compelling need is not that a retailer cannot find a location where it wants to be or that a commercial use is more profitable. *See Schloemer v. City of Louisville*, 298 Ky. 286, 182 S.W.2d 782 (1944). This is a repeat of the appellants' first two arguments which we addressed above. Under *Louisville v. Kavanaugh*, Ky., 495 S.W.2d 502 (1973), the circuit judge could make such a finding but he did not. In the words of the circuit judge, what this case comes down to is that, "Zoning lines must be drawn somewhere and this duty is properly assigned to the Urban County Council." *See City of Bowling Green v. Hunt*, Ky., 516 S.W.2d 647, 648 (1974).

For the foregoing reasons, we agree with the circuit court that the council's findings were supported by substantial evidence and that the appellants were not able to show arbitrariness or a compelling need for their request. Therefore, the judgment of the Fayette Circuit Court, denying appellants' request for a zoning map amendment, is affirmed.

EMBERTON, J., concurs.

GARDNER, J., dissents and files a separate opinion.

GARDNER, Judge, dissenting.

I respectfully dissent.

The Fritzes own property on the corner of Wilson–Downing Road and Nicholasville in Lexington, Kentucky, which is currently zoned for single family homes on lots of at least 8,000 square feet. Their home is directly across the street from the largest shopping center in Kentucky, Fayette Mall, in an area that is now the premier retail sector for central Kentucky. Recent studies have shown that over 40,000 vehicles pass within a few yards of the Fritzes front porch each day.

The Planning Commission and the council of the Lexington Fayette Urban County Government will not allow the Fritzes to develop their land for a department store because they claim it violates the government's Comprehensive Plan (Plan). The majority affirms this decision because they hold that the council properly relied on the Plan to reach their decision. I disagree on the basis that the Plan does not have the substance upon which a sound decision can be made in this case. Thus, the council's finding against the Fritzes was arbitrary and should be reversed. The Plan, and the council's defense of the Plan, is faulty in three ways.

First, changes in the area consistently have overridden the Plan. For example, the west side of Nicholasville Road, just below the Fritzes property and to the south, was designated as an "employment center" which should employ a high number of workers in industrial-type settings. The east side of Nicholasville, where the Fritzes property is located, was planned as high density residential space in order to house those workers. Today, the west side of Nicholasville contains only retail establishments such as auto dealerships, restaurants and a health club. Though there are relatively few employees in these businesses, the Plan continues to encourage the Fritzes to develop their property

as high density apartment space or else have it remain at its current zoning classification.

Secondly, the Fritzes property is no longer suited for residential purposes. This relatively small area of Nicholasville Road is fed by two primary traffic arterials (New Circle Road and Man O'War Boulevard) and busy secondary arterials such as Wilson–Downing Road and Reynolds Road. Time and again the council has been forced to concede that traffic patterns and the demand for retail space make this area of Nicholasville Road better suited for retail development than for residential use. Of the twenty zoning changes granted along Nicholasville Road since the 1968 Plan, nineteen have changed from residential to retail classifications. In fact, the new 250,000 square foot expansion of Fayette Mall and the South Park and Crossroads shopping centers occupy land that, like the Fritzes property was once restricted to residential use by the Plan.

Finally, the Plan itself is based on old data and assumptions that no longer jibe with the reality of the Nicholasville Road area. The Plan relies on studies which predicted total retail sales in the county of $875 million in 1994 (excluding auto sales) when the actual figure was $2.3 billion. Also, the Planning Commission states that allowing the development of apartment housing on the Fritzes property is preferable to retail development, in part, because of traffic concerns. Yet the council was not able to contradict expert testimony that showed traffic congestion would be worse, not better, if apartments were constructed here. Furthermore, the council asserts that existing shopping centers already meet the retail needs of this part of the community, when in reality, this area has only a 1% vacancy rate for retail space compared to a 5% rate for the Lexington market as a whole.

Establishing artificial boundaries for land use planning is sometimes difficult, but often vital for the rational growth of a community. Because of this difficulty, it is imperative that such decisions are made with superior information, foresight, and consistency. I find these traits lacking in the councils rejection of the Fritzes request for a zoning change. I would reverse.