James L. DAVIS and Nancy Davis, Appellants,

v.

BOARD OF COMMISSIONERS OF THE CITY OF DANVILLE; John W.D. Bowling, Mayor; William Davis, Alex Stevens, Nancy Caudill, and George Cunningham, Members of the Board of Commissioners of the City of Danville; and Mitchell Edward Clark Appellees.

No. 1997–CA–002209–MR.

Court of Appeals of Kentucky.

June 25, 1999.

Richard V. Murphy, Lexington, Kentucky, for Appellants.

Edward D. Hays, H. Vincent Pennington, III, Danville, Kentucky, for Board of Commissioners of the City of Danville.

BEFORE: GARDNER, HUDDLESTON, AND SCHRODER, JUDGES.

## OPINION

SCHRODER, Judge.

This is an appeal of a circuit court judgment affirming a zone change granted by a city commission without a conceptual development plan. Because the zoning ordinance requires *all* zone change requests to be accompanied by a conceptual development plan, and the request in question did not, we reverse and remand for an appropriate order voiding the zone change.

■ Mitchell Edward Clark (Clark) owns 47.513 acres of land on the southwest quadrant of the intersection of U.S. 127 and U.S. 150 Bypass in the City of Danville. Clark requested a zone change from Agricultural/Residential (AR–1) to Highway/Commercial (HC). On March 1, 1995, the Danville/Boyle County Planning and Zoning Commission (Planning Commission) held a public hearing on the proposed request. The Planning Commission discussed the matter at its meeting on May 17, 1995, and voted to deny the requested zone change. The matter was forwarded to the Board of Commissioners of the City of Danville (City Commission) which reviewed the transcript of the hearing before the Planning Commission and on August 8, 1995, voted to overturn the recommendation of the Planning Commission and granted the requested zone change. The appellants appealed to the Boyle Circuit Court which affirmed the City Commission.

Appellants' argument on appeal to this Court contends that the City Commission lacked authority to grant the requested zone change because the request was not accompanied by a proposed development plan. Under the local zoning ordinance (Article 7, Section 720), any request for a zone change to HC (and others) shall be accompanied by a proposed or conceptual development plan which shall include (Section 723) (graphic or written or combination):

1. The conservation of natural resources on the property proposed for development, including: trees and other living vegetation, steep slopes, water courses, flood plains, soils, air quality, scenic views, and historic sites;

2. The provisions for safe and efficient vehicular and pedestrian transportation both within the development and the community;

3. The compatibility of the overall site design (location of buildings, parking lots, screening, landscaping) and land use or uses with the existing and projected future development of the area;

4. The provision of sufficient open space (scenic and recreation) to meet the needs of the proposed development;

5. The provision of adequate drainage facilities on the subject site in order to prevent drainage problems from occurring on the subject site or within the community;

6. Conformance of the development plan with the Comprehensive Plan and Zoning District Regulations; and

7. Impact on community facilities and schools may be required.

Per Section 722, any recommendation for a zone change shall be subject to the submission and approval of a final development plan which includes more details (Section 724) of the above conceptual or preliminary development plan.

At the Planning Commission hearing, Clark presented a document titled "Conceptual Development Plan" (Plan) which was prepared by a surveyor. The Plan

was basically a survey with topography lines. An existing entrance off the Bypass is also shown. Existing structures, uses, etc. are not shown. An oral presentation was made at the Planning Commission's public hearing. The circuit court reviewed the record and found:

> Clark's property is located at the intersection of U.S. 150 Bypass and U.S. 127. It is some 47 acres of agricultural property. This agricultural property has not been cultivated for twelve to fifteen years. There is an old house located on the property that has deteriorated. There is no historical significance to the property. The surrounding uses include K–Mart, WalMart and other commercial uses on all three developed quadrants of the intersection. The two proposed entrances to this property have state approval. *Clark indicates he will provide detailed plans of development at the time of development.* The property is located at a major intersection with complete turn lanes and traffic lights and is easily accessible from all points in Danville and Boyle County. The utility services are available as the property is located within the city limits of Danville and the urban service boundary. The location principles of the comprehensive plan are satisfied by this property. Highway U.S. 127 has been rebuilt with two left turning lanes and five lanes of new traffic U.S. 127 that goes north and south. The Bypass has been expanded from two lanes to four lanes on the north side of the property. The two proposed entrances are located directly across from Denmark Drive and across from the traffic signal on U.S. 127 to WalMart. (Emphasis added.)

The circuit court addressed the adequacy of the conceptual development plan and ruled: "This is not required by the Planning Commission by-laws nor by the law in the Commonwealth of Kentucky." *Citing Hardin County v. Jost*, Ky.App., 897 S.W.2d 592 (1995). The *Hardin County* case involved a "growth guidance assessment" which the Court held did not comply with the requirement of the statutes governing comprehensive planning. The case sub judice involves development plans which are not only different but specifically authorized by statute.

Chapter 100 of the Kentucky Revised Statutes is the enabling act for planning and zoning for cities and counties in Kentucky. Under KRS 100.203, cities and counties *may* enact zoning regulations. The majority of counties still do not have zoning regulations. However, if the community does adopt planning and zoning regulations, it *shall* follow Chapter 100 of the Kentucky Revised Statutes. *Bellefonte Land v. Bellefonte*, Ky.App., 864 S.W.2d 315 (1993). KRS 100.203 states that in adopting a zoning ordinance:

> (2) The text may provide that the planning commission, as a condition to the granting of any zoning change, may require the submission of a development plan, which shall be limited to the provisions of the definition contained in KRS 100.111(8). Where agreed upon, this development plan shall be followed.

A development plan is defined under KRS 100.111(8) to be:

> (8) "Development plan" means written and graphic material for the provision of a development, including any or all of the following: location and bulk of buildings and other structures, intensity of use, density of development, streets, ways, parking facilities, signs, drainage of surface water, access points, a plan for screening or buffering, utilities, existing manmade and natural conditions, and all other conditions agreed to by the applicant;

■ The survey with the discussion at the public hearing clearly did not amount to a conceptual development plan. The circuit court says as much in its findings: "Clark indicates he will provide detailed plans of development enact at the time of development." Clark's plan did not comply with section 723 of the zoning ordinance which requires the delineation of pedestrian and vehicle ways, the site of buildings, parking lots, drainage, screening, proposed uses, etc. KRS 100.203(2) allows the local

zoning ordinance to require such delineation. If the requirement is placed in the ordinance, it must be followed. *Bellefonte,* 864 S.W.2d at 315. Since the request did not comply with the ordinance, the requested zone change should have been denied.

For the foregoing reasons, the opinion of the Boyle Circuit Court upholding the zone change is reversed and the matter remanded for the entry of an appropriate order.

ALL CONCUR.