**Melvin MANLEY and Elmira Manley, his wife, Appellants,**

v.

**The CITY OF MAYSVILLE, a Municipal Corporation, et al., Appellees.**

Court of Appeals of Kentucky.

June 27, 1975.

Rehearing Denied Sept. 19, 1975.

Bernard Coughlin Hargett, Maysville, for appellants.

John W. McNeill, A. V. Fox, Fox, Wood & Wood, Maysville, for appellees.

VANCE, Commissioner.

This is an appeal from a judgment upholding a zoning ordinance of the City of Maysville, Kentucky, which changes the zone classification of a one-quarter block area from residential to business usage. We reverse.

In the City of Maysville there is a small residential area bounded on the north, west and south by railroad tracks and spur lines and on the east by Lexington Street. This area contains eighty-six structures of which eighty-three are residential. The three nonresidential structures are: a small motel, a warehouse and the Forest Avenue School. In 1961 the area was zoned for residential purposes. The motel, warehouse and school were then in existence. The school property occupies approximately one-fourth of one block at the corner of Poplar Street and Forest Avenue.

The Maysville Independent School District closed the Forest Avenue School and sold the property at auction to Frank Carrigan and his wife, Barbara, upon condition that the purchase price be refunded if the purchasers could not secure an amendment of the zoning ordinance to permit business usage of the property. Following application for a map amendment to the zoning ordinance for this one-fourth block, the planning commission held a public hearing and recommended that the application be denied. The city council did not hold any additional public hearings but considered the evidence that was introduced at the hearing before the planning commission.

The city council made the following findings of fact:

"(4) The original zoning of the involved area under the comprehensive plan was inappropriate in view of the fact that, at the time such classifications were imposed upon this block and in this neighborhood, there existed a motel of six to eight units, a large tobacco warehouse which occupies nearly one-eighth of a city block; a major trunk of the Louisville & Nashville Railroad and the major east-west line of the Chesapeake & Ohio Railroad;

"(5) The abandonment of the school property, which constitutes one-quarter of a city block, was a material change of an economic and social nature which could not have been foreseen or anticipated by the comprehensive plan and which has substantially altered the character of the neighborhood;

"(6) The area sought to be rezoned is tangential to and touches upon an area which was rezoned in 1968 from residential to light industrial (R–3 to I–1), that the said area is bounded on the north by the Chesapeake & Ohio Railroad, on the West by Poplar Street, on the North by Strawberry Alley and the area sought to be rezoned and on the East by Lexington Street.

"(7) That within a two-block radius of the site for which a change in zoning classification is sought, there exists presently:

(a) two filling stations,

(b) six tobacco warehouses, one of which is the largest tobacco warehouse in the Commonwealth of Kentucky on one level;

(c) a grocery store

(d) a carry-out prepared food dispensary,

(e) a medical clinic

(f) an electrical utility sub-station serving a major part of East Maysville,

(g) a bulk oil and gasoline distributorship,

(h) a concrete block manufacturing installation,

(i) a pre-cast concrete form manufacturing installation,

(j) a skating roller-rink, and

(k) the motel and railroads mentioned in finding Number 4.

"(8) That the building which has in the past housed the school which is now aban-

doned is inappropriate for residential purposes and that its only feasible and economically practicable use is commercial.

"(9) That the best interest of the community will be served by granting a rezoning of the property in question and that the rezoning will not materially affect any of the adjacent property owners in the area.

"(10) That the change sought is in conformance with the original zoning master plan adopted by the City of Maysville;"

The city council granted the zone change. Upon appeal to circuit court the action of the city council was upheld.

■ When a city legislative body makes a zoning change, it must make a finding of adjudicative facts necessary to support the change. These findings must be made from (and supported by) the evidence heard by the Planning Commission or from evidence heard by the city legislative body if it elects to hold a separate trial-type hearing. *City of Louisville v. McDonald*, Ky., 470 S.W.2d 173 (1971); *Montfort v. Archer*, Ky., 477 S.W.2d 144 (1971), and *Hines v. Pinchback-Halloran Volkswagen, Inc.*, Ky., 513 S.W.2d 492 (1974).

■ The evidence heard in no way supports the findings of the city legislative body. At the time of the original zoning the area involved was almost exclusively residential. It was buffered by natural boundaries. The evidence showed that the dwellings within the area, though old, were among the best kept and maintained in the city and photographs in the record corroborate that fact. The fact that the area contained a small motel, a warehouse and a school and that numerous businesses were located in an adjacent zoning area is not sufficient evidence to support a finding that the original zoning was inappropriate. Even if it were true that the entire area was zoned inappropriately to begin with the change sought here for this one-fourth of block would do little to correct the situation.

■ As we pointed out in *City of Louisville v. Kavanaugh*, Ky., 495 S.W.2d 502 (1973), the purpose of KRS 100.213 is to require zoning to conform to the basic scheme of prior planning and to prohibit indiscriminate, piecemeal attempts to rezone.

Although the abandonment of the school might be considered a major change in the area which was not anticipated at the time of the original zoning, it must be noted that the school was one of only three nonresidential uses in the area. Its abandonment reduces the number of nonresidential uses, thereby making it proportionately more residential in character than before. The basic character of this area has not been altered. It remains today, as it was when originally zoned, overwhelmingly residential.

■ The finding that the change sought is in conformance with the original zoning master plan is the finding of an ultimate fact. We held such a finding inadequate in *Caller v. Ison*, Ky., 508 S.W.2d 776 (1974). No evidence supports the finding. On its face a change to business use for a one-quarter block area in a residential zone is not in conformity with a master plan which designates residential usage of the area.

The judgment is reversed with direction to enter a new judgment declaring the amendment to the zoning ordinance invalid and of no effect.

All concur.