**HARDIN COUNTY, Hardin County Fiscal Court, and Hardin County Planning and Development Commission, Appellants,**

v.

**Joan JOST and Animal Refuge Center, Inc., Appellees.**

No. 92–CA–2822–MR.

Court of Appeals of Kentucky.

Jan. 6, 1995.

Discretionary Review Denied by Supreme Court May 31, 1995.

Ken M. Howard, Hardin County Atty., Jeffrey England, Commonwealth Atty., Elizabethtown, for appellants.

Alex Talbott, Louisville, Stephen G. Wheatley, Radcliff, for appellees.

Before HOWERTON, HUDDLESTON and JOHNSON, JJ.

*OPINION*

HOWERTON, Judge.

Hardin County, Hardin County Fiscal Court, and Hardin County Planning and Development Commission ("the County") appeal from a judgment of the Hardin Circuit Court declaring the entire Hardin County planning and zoning ordinance invalid and vacating the County's denial of the right of Joan Jost to use her property as an animal refuge center. We have considered the briefs and arguments, and agree with Judge Cooper's conclusions and the manner in which he described and resolved the legal questions. As a consequence, we set forth his statement of facts and a substantial portion of his legal analysis and adopt it as our own. We have added additional comments following Judge Cooper's opinion which we believe further explain our views.

**1.** *The Development Guidance System.*

On January 9, 1984 and pursuant to KRS 100.201, et seq., the Hardin Fiscal Court adopted a zoning ordinance for land use regulation in the unincorporated areas of Hardin County. That ordinance, known as the Development Guidance System, is said to be unique in the Commonwealth of Kentucky and, perhaps, in the United States. It admittedly does not follow the traditional approach of establishing separate zones for particular types of development with identifiable permitted and conditional uses. Instead, it designates the entire unincorporated area of the county as one zone, and designates three types of uses for that zone. Agricultural and single family residential uses are designated as "uses-by-right." Uses having a negative impact on the quality and supply of water, or which endanger public health, or historic sites, are designated as "prohibited uses" (as are certain flashing signs). Everything else is designated as a "conditional use." Conditional use is defined as "a use of land or activity permitted only after fulfillment of all local regulations." Thus, anyone desiring to use his property for any purpose other than agricultural or single family residential use must obtain a conditional use permit. The Development Guidance System contains no provision for a board of adjustment, but vests the traditional functions of that board in the planning commission. Thus, the commission's functions include not only preparation of the comprehensive plan and any amendments, KRS 100.183, KRS 100.197, *City of Lakeside Park v. Quinn,* Ky., 672 S.W.2d 666 (1984), but also the functions of a traditional board of adjustment, including hearing and deciding applications for conditional use permits. KRS 100.237(1).

For the purpose of determining whether to grant an application for a conditional use permit, the Development Guidance System first requires application of a "growth guidance assessment." This initial step involves the commission's evaluation of a land use proposal based upon a point system. Points are awarded on the basis of a project's proximity to previously

developed areas and related amenities, as well as the suitability of the soil at the proposed site for agricultural purposes. If a proposal scores 150 points, it is automatically submitted for a "compatibility assessment." If a proposal fails to score 150 points, the planning commission reviews the application in a summary proceeding. If a proposal is rejected at that stage, an applicant may appeal to the commission for further review at a public hearing. If the commission determines that the site is suitable for development despite a score of less than 150 points on the growth guidance assessment, the project is also submitted for a "compatibility assessment."

The compatibility assessment involves an informal compatibility meeting of the applicant, surrounding property owners, and the commission's staff to discuss the proposed development. This procedure is designed to create compromise, and problems relating to the proposed development are discussed and solutions proposed. If no consensus is reached, a public hearing is held, following which the commission decides whether to reject the proposal as incompatible or place conditions on the project in order to make it compatible. If the project is rejected at any stage, the applicant may appeal to the Hardin Fiscal Court for a *de novo* hearing and decision.

### 2. *The Jost Application.*

On April 17, 1985, Joan Jost purchased the first 7.25 acres of her property. The remaining 17.1423 acres were purchased on June 21, 1988. The testimony adduced at the planning commission hearing on August 6, 1991 was uncontroverted that Jost had established and was operating an animal refuge center on her property prior to September 18, 1989. (See letters of May 7 and May 11, 1987 to Jost (then Gnage) from Dennis A. Gordon, former director of the planning commission, and letter from Jost to Mr. Eubanks, dated March 1989 and introduced into the record by the attorney for the surrounding landowners.)

By letter of July 11, 1990 from Tim J. Asher, Gordon's successor as director of the planning commission, Jost was notified

that, "Based on the information we received, it appears that a Conditional Use Permit is required for the operation of the Animal Refuge Center." By letter of June 5, 1991 from Asher, Jost was informed that she had seven days in which to seek a conditional use permit. Jost filed an application for the permit, and a compatibility meeting was scheduled for July 11, 1991. It appears that no growth guidance assessment was ever made. No compromise was reached at the compatibility meeting, so the application was set for a public hearing on August 6, 1991. Following that hearing, Asher submitted a memorandum to the Commission, summarizing the evidence presented at the public hearing and the various options to be considered. As reflected in the minutes of its meeting of August 20, 1991, the commission voted to deny the conditional use permit.

Section 8.3 of the ordinance provides for an appeal from a decision of the planning commission to the fiscal court within fourteen days of the rendition of the commission's decision. On September 3, 1991, Jost filed her appeal to the fiscal court. A hearing was held on September 23, 1991; and on September 30, 1991, the fiscal court voted to affirm the decision of the commission. Jost filed this action on October 30, 1991.

. . . .

### 5. *Validity of the Ordinance.*

■ Zoning ordinances are an exercise of the police power of the state, and no subdivision thereof may exercise that power except through a grant made by the people of the state through its legislative branch. *Fowler v. Obier,* 224 Ky. 742, 7 S.W.2d 219, 223 (1928). It is elementary that to the extent that an ordinance conflicts with a provision of KRS chapter 100, it is invalid. *Hacker v. Baesler,* [Ky., 812 S.W.2d 706 (1991) ] *supra* at 709; *Green v. Bourbon County Joint Planning Commission,* Ky., 637 S.W.2d 626, 629 (1982).

■ It is clear that in enacting KRS chapter 100, the legislature considered careful planning as a prerequisite of good zoning. *City of Erlanger v. Hoff,* Ky., 535

S.W.2d 86, 88 (1976); *City of Louisville v. McDonald,* Ky., 470 S.W.2d 173 (1971); *Fritts v. City of Ashland,* Ky., 348 S.W.2d 712 (1961). A comprehensive plan must have general application throughout the community, so that the facts to be considered do not relate as such to a particular individual or the status of his property. *McKinstry v. Wells,* Ky.App., 548 S.W.2d 169, 173 (1977). Zoning must conform to planning, so as to prohibit indiscriminate, ad hoc zoning. *Manley v. City of Maysville,* Ky., 528 S.W.2d 726, 728 (1975); *cf., Hines v. Pinchback–Halloran Volkswagen, Inc.,* Ky., 513 S.W.2d 492, 494 (1974). Thus, in *Kindred Homes, Inc. v. Dean,* Ky.App., 605 S.W.2d 15 (1979), a comprehensive plan which relegated the entire unincorporated areas of Jessamine County to an agricultural zone, so that modifications could only be made piecemeal, was struck down as contrary to the very theory of zoning. And in *Rockhill v. Township of Chesterfield,* 23 N.J. 117, 128 A.2d 473 (1956 [1957]), the supreme court of New Jersey struck down an ordinance almost identical to Hardin County's ordinance, holding that reserving the use of the whole of the area to agricultural and residential use, then providing for all manner of "special uses" was the antithesis of zoning. "It makes for arbitrary and discriminatory interference with the basic right of private property, in no real sense concerned with the essential common welfare." *Id.,* 128 A.2d at 479.

■ The comprehensive plan should be a plan for orderly growth, and property owners must be able to rely on it when making investments in real estate and for the protection of land values. *Bryan v. Salmon Corp.,* Ky.App., 554 S.W.2d 912, 917 (1977). In other words, a person investing in property ought to be able to look at the comprehensive plan and determine with some degree of reasonable certainty the use to which the property can be put before it is purchased. *Rockhill v. Township of Chesterfield, supra,* 128 A.2d at 480. In striking down certain provisions of the Kentucky Billboard Act, our supreme court declared those provisions void because they failed to put a particular property owner on notice as to whether his property was or was not subject to the statute. *Diemer v. Commonwealth, Transportation Cabinet,* Ky., 786 S.W.2d 861, 865 (1990).

■ It is a corollary to the notice requirement that a zoning ordinance must contain standards to be used in determining whether to permit or deny a conditional use, so as not to vest absolute and arbitrary power in the administrative agency. *Carlton v. Taylor,* Ky.App., 569 S.W.2d 679, 681 (1978). While application of the growth guidance assessment can place a prospective property owner on notice as to what uses cannot be made of the property, it cannot tell him with any degree of certainty whether any particular use can be made of the property. Even if the proposed use totals 150 points under those guidelines, the use still can be denied if enough neighbors can convince the planning commission members that the use is "incompatible" with their neighborhood. In fact, no growth guidance assessment was ever made in this case, perhaps because the growth assessment guidelines do not apply to all possible uses, *e.g.,* an animal refuge center. Thus, no standard was applied to this application, except whether the proposed use was compatible with the neighborhood. Basing zoning decisions solely on the complaints of neighbors ignores the basic premise of planning and zoning. "The effect of a zoning change on the value of neighboring property is only one factor to be considered, and the purpose of zoning is not to protect the value of the property of particular individuals, but rather to promote the welfare of the community as a whole." *Fritts v. City of Ashland,* Ky., 348 S.W.2d 712, 714 (1961). Could Jost have anticipated this result when she purchased her property? Even as late as 1987, the director of the planning commission advised her in writing that her use of the property did not require a conditional use permit.

It is a fundamental precept of zoning that a property owner is entitled to have his property zoned based on proper zoning concepts without regard to the one particu-

lar use he might then intend to make of his property. "A zoning authority's insistence on considering the owner's specific use of a parcel of land constitutes not zoning but direct governmental control of the actual use of each parcel of land which is inconsistent with constitutionally guaranteed private property rights." *Porpoise Point Partnership v. St. John's County,* Fla. App., 470 S.W.2d [So.2d] 850, 851 (1985). Kentucky subscribes to this view. *Fritts v. City of Ashland, supra* at 713; *Pierson Trapp Co. v. Peak,* Ky., 340 S.W.2d 456, 459 (1960). Yet, the basic premise of the Development Guidance System requires that zoning decisions be based on the proposed specific use of each parcel of property.

KRS 100.111(6) defines "conditional use" as follows: " 'Conditional use' means a use which is essential to or would promote the public health, safety, or welfare in one (1) or more zones, but which would impair the integrity and character of the zone in which it is located, or in adjoining zones, unless restrictions on location, size, extent, and character of performance are imposed in addition to those imposed in the zoning regulation."

Obviously, this definition will not work under Hardin County's Development Guidance System, which treats every use, except agricultural or single family residential, as a "conditional use." Thus, the Development Guidance System defines a conditional use as "A use of land or activity permitted only after fulfillment of all local regulations." Stripped to its bare bones, that definition means that a conditional use is a use which is agricultural or single family residential, or which is permitted by the planning commission. *Compare, Board of Adjustments [Adjustment] and Appeals of City of Shively v. Dixie Suburban Volunteer Fire Dept.,* [Ky., 320 S.W.2d 109 (1958) ] *supra* at 110. The definition of "conditional use permit" has been similarly altered to conform to the uniqueness of the Development Guidance System. A local government has no authority to alter a definition of a term defined in KRS 100.111. *Sladon v. Shawk,* Ky.App., 815 S.W.2d 404 (1991). The ordinance must be drafted to conform to the definition, not vice versa. Since the entire Development Guidance System is predicated upon virtually every use being a "conditional use," and since that term, as defined in KRS 100.111(6), makes no sense when applied in that context, the system is not workable.

■ Although KRS 100.202(1) permits a zoning ordinance placing all property within a single zone and addressing all land use proposals therein as conditional use permits, that statute does not purport to authorize other deviations from the statutory scheme. Nor can this ordinance be saved by application of KRS 100.203(1)(3), which authorizes districts of special interest. Whether called "floating zones," *Bellemeade Company v. Priddle,* Ky., 503 S.W.2d 734, 738 (1973), or "planned unit developments (PUD's)," *Cetrulo v. City of Park Hills,* Ky., 524 S.W.2d 628 (1975), it is clear that the special use is pre-approved, *i.e.,* pre-deemed compatible with the location in advance of any individual application for the permitted use. *Bellemeade Company v. Priddle, supra* at 740; Griffin and Becker, *Kentucky Law Survey: Zoning,* 67 Ky.L.J. 659, 661 (1979). Under the Development Guidance System, no conditional use is pre-deemed compatible with any location prior to an application for a conditional use permit, *i.e.,* zoning without planning.

That, of course, is the fundamental flaw in the Development Guidance System, and it is found in its stated purpose. KRS 100.187 provides that "The comprehensive plan shall contain, as a minimum, the following elements: ... (2) A land use plan element, which shall show proposals for the most appropriate, economic, desirable, and feasible patterns for the general location, character, extent, and interrelationship of the manner in which the community should use its public and private lands at specified times *as far into the future as is reasonable to foresee.*" (Emphasis added.) Yet, in the forewords to three of the four installments of the comprehensive plan, those dated May 5, 1981, September 1, 1981 and November 10, 1981, it is stated that the purpose of the plan is to "indicate

how county government will react when certain events occur, rather than attempt to foresee the future." Treating every use application as a "conditional use" implements that purpose, in direct contravention of KRS 100.187(2). The judicial test to be applied to the validity of a zoning ordinance is whether or not the ordinance bears any substantial relation to the objects set forth in the statute which specifies the purposes of zoning regulations. *Adams v. City of Richmond,* Ky., 340 S.W.2d 204 (1960). Throughout the comprehensive plan and in the foreword to the ordinance, itself, the commission has expressed a purpose to avoid traditional zoning concepts and establish a unique system, which, even if deemed to be a better approach to planning and zoning, admittedly bears little if any substantial relation to the objects and purposes established by the enabling act.

Because the Development Guidance System bears no substantial relation to the objects and purposes set forth in KRS chapter 100, it is invalid; thus, the decisions of the Hardin County Planning and Development Commission and the Hardin Fiscal Court denying Jost the right to use her property as an animal refuge center must be vacated.

The County contends that the trial court erroneously declared the development guidance system invalid because there was no assigned use for each area. This is not Judge Cooper's reasoning. Rather, he concluded that the plan must include a more complete definition of the grounds on which a conditional use is to be permitted or denied. He observed that the plan calls for zoning decisions based on the government's reaction to future events rather than present planning for the future. This methodology is in direct contravention of KRS 100.187. We agree.

Moreover, although the ordinance provides that property may be used for purposes other than agricultural and residential, it does not specifically enumerate particular uses and it accordingly establishes no criteria which would justify the granting of a permit for one "conditional" use as opposed to another use. The conditional use statute from which the ordinance purports to gain its vitality limits uses other than those expressly permitted in a given geographical area to "uses which are specifically named in the zoning regulations." The naked labeling of all uses other than agricultural or residential uses as "conditional uses" leaves land use to the subjective whim and caprice of the zoning authority.

The judgment of the Hardin Circuit Court holding the Hardin County Development Guidance System invalid is affirmed.

All concur.