WARREN COUNTY CITIZENS FOR MANAGED GROWTH, INC.; Jim Duffer, as Chairman and Individually; Robert A. Hill, as Vice-chairman and Individually; and Gayla Cissell, as Secretary and Individually, Appellants/Cross–Appellees,

v.

BOARD OF COMMISSIONERS OF CITY OF BOWLING GREEN, Kentucky; City–County Planning Commission of Warren County, Kentucky; Inter–Modal Transportation Authority, Inc.; South–Central Kentucky Regional Development Authority; and Helen Marie Wallace Stahl, Appellees/Cross–Appellants,

and

Warren County Citizens for Managed Growth, Inc.; Jim Duffer, as Chairman and Individually; Gayla Cissell, as Secretary and Individually; and Rita Rudloff, as Board Member and Individually, Appellants/Cross–Appellees,

v.

Board of Commissioners of City of Bowling Green, Kentucky; City–County Planning Commission of Warren County, Kentucky; Inter–Modal Transportation Authority, Inc.; South–Central Kentucky Regional Development Authority; David and Shirley Herrington; Estate of Mabel I. Herring; and Danny and Margie Duvall, Appellees/Cross–Appellants.

Nos. 2004–CA–002251–MR, 2004–CA–002320–MR, 2005–CA–000287–MR, 2005–CA–000345–MR.

Court of Appeals of Kentucky.

May 26, 2006.

Rehearing Denied July 17, 2006.

Discretionary Review Denied by Supreme Court Dec. 13, 2006.

W. Henry Graddy, IV, W.H. Grady & Associates, Midway, KY, Benjamin D. Crocker, Travelstead & Crocker, Bowling Green, KY, for appellants/cross-appellees.

H. Eugene Harmon, City of Bowling Green, Department of Law Bowling Green Kentucky, Frank Hampton Moore, Jr., Matthew P. Cook, Cole & Moore, & Baker, Bowling Green, KY, Sheryl Snyder, Louisville, KY, for appellees/cross-appellants Board of Commissioners of City of Bowling Green and City County Planning Commission of Warren County.

L. Jude Clark, Jr., Griffin Terry Sumner, Sheryl Snyder, Frost Brown Todd, LLC, Louisville, KY, Whayne C. Priest, Jr. English, Lucas, Priest & Owsley, LLP, Bowling Green, KY, for appellee/cross-appellants Inter–Modal Transportation Authority, Inc., South Central Kentucky Regional Development Authority and Helen Marie Wallace Stahl.

Before KNOPF and TACKETT, Judges, and HUDDLESTON, Senior Judge.[1]

## OPINION

KNOPF, Judge.

Warren County Citizens for Managed Growth, Inc. (WCCMG) appeals from summary judgment orders of the Warren Circuit Court affirming two Bowling Green city ordinances re-zoning tracts of property from agricultural to industrial. WCCMG also appeals from the circuit court's dismissal of its declaratory judgment actions relating to those re-zonings. The appellees cross-appeal from the circuit court's findings that WCCMG and its named members have standing to pursue a statutory appeal of the zoning ordinances. Given the related subject matter and is-

---

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580

sues presented, this Court ordered the appeals consolidated. We find that WCCMG and its named members have standing to pursue these appeals. However, we agree with the circuit court that the ordinances granting the map amendment were not arbitrary. Hence, we affirm in the appeals and in the cross-appeals.

The properties at issue are owned by the Intermodal Transportation Authority, Inc., South Central Kentucky Regional Development Authority, and various other individual landowners (collectively, the landowners). The landowners sought the re-zoning of the properties to industrial as part of a larger development of the Kentucky Intermodal Transpark—a proposed regional industrial park development with air, rail and highway links. The re-zonings at issue in these appeals are the second and third actions, respectively, of four re-zonings related to the development of the Transpark.[2]

The subject property of the 2003 action is comprised of seven adjoining tracts consisting of a total of 236.13 acres. The property is bounded on the north by U.S. Highway 68/Kentucky Highway 80; on the east by Sunnyside–Gott Road; on the west by Hays–Martin Road; and on the south by the CSX Railroad tracks. The subject property of the 2004 action is comprised of three non-contiguous tracts consisting of a total of approximately 330 acres. Two of these tracts are located on the north side of U.S. Highway 68/Kentucky Highway 80. The easternmost tract (273.88 acres) is

bounded by Mizaph Road, and the middle tract (40.41 acres) is located 2,482.62 feet from the intersection of U.S. 68/Ky. 80 and U.S. Highway 31–W. The westernmost tract (14.98 acres) fronts the south side of U.S. 31–W, 1,773.92 feet from the intersection with U.S. 68/Ky. 80.

The subject properties of the 2003 and the 2004 actions are all located within the city limits of Bowling Green. At the time of the applications, the properties were zoned agricultural and were used for that purpose. The adjoining properties to the north, east and south were also zoned and used for agriculture. The adjacent property to the west is zoned industrial, a use that pre-dated Warren County's adoption of zoning.

The landowners filed an application for a zoning map amendment in the 2003 action on July 28, 2003, and in the 2004 action on April 4, 2004.[3] The separate applications proceeded in a similar manner. In both actions, the City–County Planning Commission of Warren County, Kentucky (the Planning Commission) referred the matters to its staff for initial review. After reviewing the applications and supporting studies, the Planning Commission staff issued reports recommending that the map amendments be granted, subject to certain binding elements relating to matters which concerned the staff.

In the 2003 action, the Planning Commission held a public hearing on August 21

---

**2.** A previous appeal from a map amendment involving the first tract was affirmed by the Warren Circuit Court and by this Court. *City of Oakland, et al. v. Board of Commissioners of the City of Bowling Green, et al.,* Nos. 2003–CA–001153–MR & 2003–CA–001229–MR, 2004 WL 2150978 (Not-to-be Published Opinion rendered September 24, 2004) (*D.R. den.* September 14, 2005). A fourth action involving the same parties was also filed after the briefs in these cases were submitted. *Warren*

*County Citizens for Managed Growth, et al. v. Board of Commissioners of the City of Bowling Green, et al.,* No. 2005–CA–002339–MR.

**3.** In the 2003 action, the landowners sought re-zoning of all of the property from agricultural to heavy industrial. In the 2004 action, the landowners sought to rezone the easternmost and middle tracts to heavy industrial, and the westernmost tract to light industrial.

and August 23, 2003. The landowners and the opponents of the re-zoning were each represented by counsel and were afforded the opportunity to call and cross-examine witnesses. In addition, the staff report was read into the record, and the Planning Commission Executive Director testified concerning the studies which went into the report and the binding elements which came out of the report. Other witnesses also testified for both sides. And at the conclusion of proof, individuals were allowed to make statements to the Planning Commission concerning their views on the proposed re-zoning. After hearing the evidence, the Planning Commission voted 10–2 to recommend approval of the proposed map amendment.

The matter then proceeded to the Board of Commissioners of the City of Bowling Green (the City Commission) for consideration on September 9, 2003. The City Commission received the Planning Commission's report and recommendation, and heard arguments from proponents and opponents of the re-zoning. The City Commission then conducted the first reading of the ordinance granting the map amendment,[4] which was approved by unanimous vote. On October 7, 2003, the City Commission conducted its second reading of the ordinance, where it was enacted by unanimous vote.

Likewise in the 2004 action, the Planning Commission held a public hearing on May 6, 2004. As with the 2003 action, the staff report was read into the record, and individuals were allowed to make statements concerning their views on the proposed re-zoning. After hearing the evidence, the Planning Commission voted 9–1 to recommend approval of the proposed map amendment. The matter then pro-

ceeded to the City Commission on May 18, 2004. The City Commission adopted the Planning Commission's findings and conducted the first reading of the ordinance granting the map amendment.[5] On June 1, 2004, the City Commission conducted its second reading of the ordinance, where it was enacted by unanimous vote.

On November 6, 2003, within thirty days from the City Commission's enactment of Ordinance No BG2003–52, WCCMG filed an appeal pursuant to KRS 100.347 seeking judicial review of the ordinance. WCCMG filed a separate count alleging that members of the Planning Commission and the City Commission were predisposed in favor of the map amendment application. The matter was submitted to the court on cross-motions for summary judgment. In an opinion and order rendered on July 7, 2004, the trial court granted summary judgment for the Planning Commission and the City Commission and the landowners. The trial court entered a separate order on October 1, 2004, making corrections to the July 7 order. The court also dismissed WCCMG's claim for declaratory relief, finding that the issue of prejudgment bias was outside of the scope of review and had not been properly preserved.

Similarly, on July 2, 2004, WCCMG filed a timely appeal from the enactment of Ordinance No. BG2004–24. As in the 2003 action, WCCMG challenged the ordinance under KRS 100.347, and filed a separate claim for declaratory relief alleging bias by members of the Planning Commission and City Commission. On December 10, 2004, the trial court granted summary judgment for the City Commission, the Planning Commission, and the landowners. In a separate order entered on January 10,

---

4. Ordinance No BG2003–52, "ORDINANCE REZONING REAL ESTATE".

5. Ordinance No BG2004–24, "ORDINANCE REZONING REAL ESTATE".

2005, the trial court dismissed WCCMG's claim for declaratory relief.

WCCMG filed timely notices of appeal after each judgment, and the appellees responded with cross-appeals from the trial courts rulings in both actions finding that WCCMG had standing to pursue the appeals. Although the re-zonings were considered in separate applications and at different times, the re-zonings all took place as part of the Transpark project, and the properties are all within a close distance of each other. Furthermore, the respective circuit court judgments upheld the ordinances on substantially similar grounds. Likewise, the issues presented in the appeals and cross-appeals to this Court are identical. Consequently, this Court will consider the appeals together.

In their cross-appeals, the Planning Commission, the City Commission and the landowners argue that WCCMG and its named members lack standing to appeal from a re-zoning decision. WCCMG is a non-profit corporation which advocates against the Transpark project. There is no indication that it owns any real property. Jim Duffer is chairman of WCCMG, Robert Hill (a party to only the 2003 action) is vice-chairman, Gayla Cissel is secretary, and Rita Rudloff (a party to only the 2004 action) is a member of WCCMG's Board. The record indicates that Cissell resides in the city of Oakland, approximately four miles from the subject properties. Duffer, Hill and Rudloff are residents of Warren County, but the record does not indicate how far they reside from the subject properties.

 The Planning Commission and the City Commission cite *21st Century Development Co., LLC v. Watts,*[6] and *City of*

*Beechwood Village v. Council of and City of St. Matthews,*[7] as holding that only residents of the municipality where the subject property is located have standing to appeal from the re-zoning ordinance. In both of those cases, this Court held that the standing requirement was met since at least one of the appellants lived or owned property in the city where the subject property was located. But contrary to the appellees' argument, neither of these cases establishes residency within the municipality as a prerequisite to standing.

Indeed, such a requirement would be contrary to the express language of KRS 100.347(3), which provides that "[a]ny person or entity claiming to be injured or aggrieved by any final action of the legislative body of any city, county or urban-county government, relating to a map amendment shall appeal from the final action to the Circuit Court of the county in which the property, which is the subject of the commission's actions, lies." The statute and the common law before the statute was enacted recognize that a zoning change affects more than merely the adjacent property. Since the purpose of zoning is not to protect the value of the property of particular individuals but rather to promote the welfare of the community as a whole, an improper re-zoning damages the entire community because it causes insecurity of property values throughout the affected area. "So the mere fact that the particular complaining parties may not suffer a decrease in the value of their property will not redeem a zoning change that is not related to proper zoning objects."[8] Given these policy considerations, Kentucky courts have been reluctant to limit

---

6. 958 S.W.2d 25 (Ky.App.1997).

7. 574 S.W.2d 322 (Ky.App.1978).

8. *Fritts v. City of Ashland,* 348 S.W.2d 712, 714 (Ky.1961).

or narrow those qualified for standing.[9]

In both actions, the circuit court recognized that the standing issue in this case cannot be considered only from a municipal perspective. The Planning Commission is a joint city-county body, with responsibility for planning and zoning throughout Warren County.[10] The purpose of the Transpark project is for regional economic development, and the primary developers, the South Central Kentucky Regional Development Authority and the Inter–Modal Transportation Authority, are both entities with a focus on regional economic development. Given the size and scope of the proposed Transpark development, as well as its public nature, the project directly affects parties well beyond the city limits of Bowling Green.

■■■ The appellees correctly note that standing to sue is a judicially recognizable interest in the subject matter. The interest may not be remote and speculative, but must be a present and substantial interest in the subject matter.[11] Simply because a plaintiff may be a citizen and a taxpayer is not in and of itself sufficient basis to assert standing. There must be a showing of a direct interest resulting from the ordinance.[12] Nevertheless, the burden was on the appellees to show that none of the appellants were aggrieved by the map amendment.[13]

■■ In this case, the closest appellant, Cissell, resides in Oakland, approximately four miles from the subject properties. There was evidence that residents of the city of Oakland will be directly affected by the Transpark development. Consequently, we agree with the trial court the appellants have standing to appeal.[14]

■■■ Thus, we turn to the merits of WCCMG's appeals from the ordinances granting the map amendments. Judicial review of a zoning decision is concerned with the question of arbitrariness—whether (1) the agency acted in excess of its statutory powers; (2) the agency's proceedings were in accord with the parties' due process rights; and (3) the action taken by the legislative body was supported by substantial evidence.[15] As to the first element, the map amendment applications were clearly within the jurisdiction of the Planning Commission and the City Commission.[16] The Planning Commission and the City Commission found that the proposed map amendments, as subject to the binding elements, were in agreement with the comprehensive plan.[17] WCCMG argues, however, that the Warren County Comprehensive Plan does not meet the requirements of KRS Chapter 100, thus allowing arbitrary re-zoning decisions. Consequently, WCCMG asserts that the Planning Commission and the City Com-

9. *21st Century Development Co., LLC v. Watts, supra* at 28.

10. The Planning Commission is a joint planning unit created pursuant to KRS 100.121 by the Fiscal Court of Warren County and the legislative bodies of the cities of Bowling Green, Oakland, Plum Springs, Smith's Grove, and Woodburn.

11. *City of Louisville v. Stock Yards Bank & Trust Co.,* 843 S.W.2d 327, 328–29 (Ky.1992).

12. *City of Ashland v. Ashland F.O.P. No. 3, Inc.,* 888 S.W.2d 667, 668 (Ky.1994).

13. *City of Beechwood Village v. Council of and City of St. Matthews, supra* at 324.

14. *See also Rogers Group, Inc. v. Masterson,* 175 S.W.3d 630, 636 (Ky.App.2005).

15. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission,* 379 S.W.2d 450, 456 (Ky.1964).

16. KRS 100.211(1).

17. KRS 100.213(1).

mission's decisions to approve the re-zonings were in excess of their statutory authority.

In *Hardin County v. Jost*,[18] this Court invalidated a map amendment ordinance because the comprehensive plan failed to meet the requirements set out in KRS Chapter 100. The Hardin County comprehensive plan at issue in *Jost* allowed only two uses, agricultural and residential. Any other uses had to be gained through a conditional use permit.[19] The comprehensive plan provided no plan for orderly growth, or any fixed standards to be used in determining whether to permit or deny a conditional use. In essence, the laws with respect to zoning were not of general application, thus allowing *ad hoc* zoning.[20]

Unlike the comprehensive plan at issue in *Jost*, the Warren County comprehensive plan assigns zoning classifications based upon land use. However, Warren County's comprehensive plan does not rely on a future land use map. Rather, the plan identifies a neighborhood classification called a "focal point." Focal points are areas within which an identifiable development pattern or style has been established. Five general types of focal points are identified: Residential, Dominant Use Areas, Rural Villages, Growth Focal Points, and Agricultural/Open Space. Warren County is divided into focal point areas. Each focal point is assigned a development status and an infrastructure status. Development status may be stable, transitional or growth prone. Infrastructure status indicates the availability of public sanitary sewer and any other infrastructure plans that may affect the focal point. The comprehensive plan states that the descriptions of the current characteristics of each

focal point are not intended to specify the future uses of the focal point. However, the comprehensive plan also provides that where a focal point plan has been adopted, new development or redevelopment shall conform to that plan.

The subject properties are located in the 117–4/5 Boiling Springs–Bristow focal point, the development status of which is designated "stable" and the predominant land use is designated agricultural/open space. The agricultural/open space focal point refers to undeveloped areas outside incorporated areas. "These areas are suitable for agricultural/open space uses and, in some cases, rural density and pattern residential development. These areas are not anticipated to experience major roadway improvements or sewer extension in the foreseeable future."[21] Focal points with the development status "stable" are characterized as areas which contain little additional undeveloped land, where there is little pressure for redevelopment; and where property values are stable or appreciating.

WCCMG argues that the Planning Commission disregarded the current focal point designation in granting the map amendment for the subject property. WCCMG further contends that the use of focal points rather than a future land use map violates the requirement that the comprehensive plan include a future land use plan element. Moreover, since the focal points are not binding to specify future uses, WCCMG asserts that the comprehensive plan allows arbitrary zoning without regard to land use planning.

KRS 100.183 requires all planning commissions to prepare a comprehensive plan

---

**18.** 897 S.W.2d 592 (Ky.App.1995).

**19.** *Id.* at 593.

**20.** *Id.* at 595.

**21.** Warren County Comprehensive Plan, p. 90.

which serves as a guide for public and private development in the most appropriate manner. At a minimum, the plan must contain (1) a statement of goals and objectives; (2) a land use plan element; (3) a transportation plan element; and (4) a community facilities plan element.[22] In particular, the land use plan element must show proposals for the most appropriate, economic, desirable, and feasible patterns for the general location, character, extent, and interrelationship of the manner in which the community should use its public and private land at specified times as far into the future as is reasonable to foresee. Such land uses may cover, without being limited to, public and private, residential, commercial, industrial, agricultural, and recreational land uses.

> By nature, a comprehensive plan speaks to future development even though it takes into consideration the current land uses. The comprehensive plan as here can include a current land-use plan or map which the legislative body can zone appropriately. KRS 100.201, 100.203. The comprehensive plan, however, looks beyond current uses, to the future, and is constantly undergoing review. KRS 100.197. Zoning changes are allowed if they are in accordance with the comprehensive plan, KRS 100.213, or if the plan is out of touch with reality, KRS 100.213(1)(a) & (b); *Wells v. Fiscal Court of Jefferson County,* Ky., 457 S.W.2d 498 (1970), and there is a compelling need for the proposed change. [*City of Louisville v. McDonald,* 470

S.W.2d 173 (Ky.1971)]; and KRS 100.213.[23]

■■■ Under KRS chapter 100, planning is a prerequisite for zoning.[24] A comprehensive plan must have general application throughout the community, so that the facts to be considered do not relate as such to a particular individual or the status of his property.[25] Zoning must conform to planning, so as to prohibit indiscriminate, *ad hoc* zoning.[26]

If the focal point plan were viewed in isolation, we might be inclined to agree with WCCMG that Warren County's comprehensive plan does not meet the requirements of KRS 100.187. The focal point system identifies areas by predominant land-use characteristics, but does not attempt to specify any plans for future land use within the focal point. But when viewed in the context of the entire comprehensive plan, Warren County's methodology for granting map amendments satisfies the requirements of KRS Chapter 100.

In addition to the focal point system, the Warren County comprehensive plan sets forth extensive policies with respect to land use, including policies specific to industrial development, and economic, infrastructure, transportation, and environmental issues. Unlike the comprehensive plan at issue in *Jost,* Warren County's comprehensive plan does not vest the Planning Commission or the City Commission with arbitrary power to grant a map amendment, but it provides clear guidelines for these bodies to consider an application.

**22.** KRS 100.187.

**23.** *Fritz v. Lexington–Fayette Urban County Government,* 986 S.W.2d 456, 459 (Ky.App. 1998)

**24.** *City of Erlanger v. Hoff,* 535 S.W.2d 86, 88 (Ky.1976); *City of Louisville v. McDonald,* 470 S.W.2d 173, 176 (Ky.1971); *Fritts v. City of Ashland, supra* at 715.

**25.** *McKinstry v. Wells,* 548 S.W.2d 169, 173 (Ky.App.1977).

**26.** *Hardin County v. Jost, supra* at 595; *Manley v. City of Maysville,* 528 S.W.2d 726, 728 (Ky.1975); *Hines v. Pinchback–Halloran Volkswagen, Inc.,* 513 S.W.2d 492, 494 (Ky. 1974).

This leads us to the sufficiency of the evidence supporting the ordinances. As previously noted, judicial review of a zoning action is confined to a determination of whether the action taken was arbitrary, and neither the trial court nor this Court is authorized to conduct a *de novo* review of the decision.[27] A decision that is not supported by substantial evidence is clearly erroneous and therefore arbitrary.[28] Substantial evidence has been defined as some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people.[29] In its role as a finder of fact, the Planning Commission is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses, including its findings and conclusions of fact.[30]

WCCMG contends that the Planning Commission disregarded the existing focal point designation, giving insufficient weight to the future land use element. However, the Planning Commission was not required to grant or deny a map amendment based only on a future land use element.[31] Although the properties are located in an agricultural focal point designated as stable, the Planning Commission identified specific aspects of the properties which render them not typical of the rest of the focal point. The properties are located in the southern portion of the 117–4/5 Boiling Springs–Bristow focal point, adjacent to an area that is already zoned industrial. Furthermore, the properties are within an area that was recently annexed by the City of Bowling Green.

Moreover, the other evidence before the Planning Commission amply supported the decision to grant the map amendment. The evidence at the public hearings included the staff report and the testimony of Planning Commission Executive Director Andrew Gilles. In addition, the Planning Commission called a number of expert witnesses, including: Denis Smith, the civil engineer who helped develop the storm water management system, Dr. Nicholas Crawford, an expert in the field of karst geology; David E. Smith, who conducted the traffic impact study; and Rick Frederico and Derek Shadoan, who conducted the environmental site assessments. WCCMG called several experts to rebut the testimony of the Planning Commission's experts.

In its factual findings in both cases, the Planning Commission found that the zoning map amendment is in agreement with forty-two of the Comprehensive Plan policies. Based on the merits of the applications and the binding elements which the Planning Commission required the landowners to accept, the Planning Commission found that the applications were consistent with the comprehensive plan. WCCMG takes issue with the factual support for some of these findings and the conclusion. WCCMG also argues that the Warren County Comprehensive Plan allows the Planning Commission to "cherry-pick" those policies which are in agreement with the application and ignore those which are not. Nevertheless, a comprehensive plan is intended to be a guide for

**27.** *City of Louisville v. McDonald, supra* at 178.

**28.** *Danville–Boyle County Planning and Zoning Commission v. Prall,* 840 S.W.2d 205, 208 (Ky.1992).

**29.** *Smyzer v. B.F. Goodrich Chemical Co.,* 474 S.W.2d 367, 369 (Ky.1971).

**30.** *Kentucky State Racing Commission v. Fuller,* 481 S.W.2d 298, 309 (Ky.1972).

**31.** *21st Century Development Co., LLC v. Watts, supra* at 27.

development, not a straight-jacket.[32] A zoning agency is not bound to follow every detail of a land use plan.[33] After reviewing the voluminous record, we agree with the trial court that the Planning Commission's findings were supported by substantial evidence.

Finally, WCCMG argues that the trial court erred by dismissing its declaratory judgment claims challenging the rezoning ordinances based upon alleged bias by members of the Planning Commission and the City Commission. The trial court in the 2003 action concluded that the claim would necessitate a *de novo* review of the zoning decision, and thus was outside of the scope of the court's review. We agree with the trial court in both actions that the claim was properly dismissed, but we base our conclusion on somewhat different grounds.

First, WCCMG's claim of bias requires a determination of whether the proceedings before the Planning Commission and the City Commission comported with due process. As such, the claim is within the scope of review of KRS 100.347 and the grounds for review set forth in *American Beauty Homes*. Because the statute affords an adequate remedy, a separate declaratory judgment action is not appropriate.[34]

Furthermore, in *Hilltop Basic Resources, Inc. v. County of Boone*,[35] the Kentucky Supreme Court recently held that due process does not require that a local legislative body be entirely impartial in its consideration of zoning matters. A legislative decision-maker will not be disqualified simply because he or she has taken a public position on a policy issue related to the dispute, or demonstrated a bias or pre-disposition toward a certain result. Rather, the arbitrariness review is concerned primarily with the product of the legislative action, and not with the motive or method which produced it.[36] Any bias involving a conflict of interest or blatant favoritism, or which demonstrates malice, fraud, or corruption is expressly prohibited as arbitrary. But a local legislator is not disqualified unless there is a showing that the legislator is not capable of judging a particular controversy fairly on the basis of its own circumstances.[37] WCCMG's general allegations do not meet this standard.

Likewise, we find no actionable claim of bias with regard to the Planning Commission. WCCMG suggests that the Planning Commission's finding and recommendation must be based *solely* upon the evidence presented at the public hearing. It asserts that the Planning Commission staff's participation in the pre-application conference and the staff's preparation of the reports impermissibly influenced the Plan-

---

32. *Ward v. Knippenberg,* 416 S.W.2d 746, 748 (Ky.1967).

33. *Id. See also Minton v. Fiscal Court of Jefferson County,* 850 S.W.2d 52, 56 (Ky.App. 1992).

34. *See Triad Development/Alta Glyne, Inc. v. Gellhaus,* 150 S.W.3d 43 (Ky.2004), holding that a declaratory judgment claim may be appropriate to appeal ministerial aspects of the zoning process which occur after the planning commission's final action and are not subject to appeal under KRS 100.347.

*See also Simpson v. Laytart,* 962 S.W.2d 392 (Ky.1998), and *Greater Cincinnati Marine Service, Inc. v. City of Ludlow,* 602 S.W.2d 427 (Ky.1980), holding that claims which are broader in scope than what is implicated within the context of the ordinary zoning appeal may be brought by a separate complaint.

35. 180 S.W.3d 464 (Ky.2005).

36. *Id.* at 469–70.

37. *Id.* at 469.

ning Commission's decision prior to the public hearing. We disagree.

As an administrative agency, the Planning Commission's merging of the investigative and adjudicative roles does not create an unacceptable appearance of bias.[38] Moreover, the Planning Commission is authorized to use its staff to conduct a preliminary investigation of an application. So long as the staff report is composed of competent evidence, all interested parties are given an opportunity to study and respond to the report, and the party preparing the report is available for examination, then the Planning Commission's use of its staff report does not violate due process.[39]

In the current cases, the proceedings before the Planning Commission afforded due process to all interested parties. When a city legislative body makes a zoning change, it must make a finding of adjudicative facts necessary to support the change. These findings must be made from and supported by the evidence heard at a trial-type hearing.[40] The Planning Commission conducted two trial-type hearings. During the hearings in each action, the staff report was introduced into the record and the executive director was subject to cross-examination at the public hearings. All interested parties were permitted to introduce evidence and speak at the hearings. After the Planning Commission forwarded its recommendations, the City Commission conducted argument-type hearings and then properly adopted the Planning Commission's findings.[41] Consequently, the record clearly establishes that all interested parties were afforded procedural due process in this matter.

In conclusion, we agree with the circuit court that WCCMG had standing to pursue these appeals. However, we also agree with the circuit court that Ordinance Nos. BG2003–52 and BG2004–24 were not an exercise of arbitrary zoning authority. The zoning decisions were within the scope of the city's authority, complied with all generally applicable zoning laws, and were supported by substantial evidence. Furthermore, all interested parties were afforded the procedural due process to which they were entitled. WCCMG was not entitled to pursue separate claims alleging bias or pre-disposition by members of the Planning Commission or the City Commission. Therefore, the circuit court properly upheld the validity of the ordinances and dismissed the declaratory judgment claims.

Accordingly, the judgments of the Warren Circuit Court are affirmed.

ALL CONCUR.

---

38. *Nicholson v. Judicial Retirement & Removal Commission,* 562 S.W.2d 306, 309 (Ky. 1978).

39. *Danville–Boyle County Planning and Zoning Com'n v. Prall, supra* at 207.

40. *Manley v. City of Maysville, supra* at 728.

41. *See City of Louisville v. McDonald, supra* at 179.