Robert HUXOL; David Eggers; Cornelius "Neal" Van Milligan; Curtis Whistle; and Carlin Gregory, Appellants

v.

DAVIESS COUNTY FISCAL COURT; Owensboro Metropolitan Planning and Zoning Commission; Ruby Jean Hitchcock Revocable Living Trust; Regina Vanover; Clara Thompson Estate; Anna Faye Belcher; Mildred Taylor Johnson Heirs; Lindley K. Taylor; Horrell C. and Minga Trogdlen, Jr.; Dorothy H. Trogdlen and Horrell C. Trogdlen, Sr.; Tilford Thompson; Steve and Karen Diana Thompson; Troy and Marcie Vanover; Shirley G. and Chris Taylor; Glen Yeiser; Western Kentucky Leasing, LLC; Charles and Donna Stewart; and Western Kentucky Minerals, Inc., Appellees

### NO. 2014–CA–001397–MR

Court of Appeals of Kentucky.

JANUARY 22, 2016; 10:00 A.M.

Discretionary Review Denied by Supreme Court February 9, 2017.

BRIEF FOR APPELLANTS: Kent Overstreet, Owensboro, Kentucky, Thomas Fitzgerald, Frankfort, Kentucky.

BRIEF FOR APPELLEES: Brian L. Haynes, Owensboro, Kentucky.

BEFORE: ACREE, CHIEF JUDGE; D. LAMBERT AND JONES, JUDGES.

## OPINION

**D. LAMBERT, JUDGE:**

This is an appeal from the Daviess Circuit Court which upheld the Daviess County Fiscal Court's August 2, 2012 decision to rezone 692 acres of agricultural land for coal mining. After careful review, we affirm.

## I. BACKGROUND

Appellee Western Kentucky Minerals, Inc. ("WKM") filed an application to amend the zoning classifications of thirteen properties in Daviess County from Urban Agriculture (A–U) and Rural Agriculture (A–R) to Coal Mining (EX–1). The proposed area totaled 692.303 acres. The Owensboro Metropolitan Planning Commission ("OMPC") considered the application during a meeting on May 10, 2012.

At the beginning of the meeting, the OMPC announced that anyone wishing to speak regarding WKM's application would have three minutes to do so. Roughly twenty minutes later, the hearing on the WKM's application began, and the OMPC Staff ("Planning Staff") entered a "Zoning Map Amendment Staff Report" into the record. This report analyzed the proposed map amendment for consistency with the OMPC's comprehensive plan and addressed the concerns of neighboring landowners. The report also set forth the Planning Staff's findings of fact and its ultimate recommendation to approve the zone change. The Planning Staff's findings of fact included the following:

1. Staff recommends approval because the proposal is in compliance with the community's adopted Comprehensive Plan;

2. The majority of the subject property is located in a Rural Maintenance Plan Area where coal mining uses are appropriate in general locations;

3. The majority of the subject property is located in the Rural Service Area outside of a Rural Community Plan Area;

4. The portion within the Rural Community Plan Area is a small portion of the overall rezoning acreage consisting of three tracts of approximately 70 acres[,] which is not consistent with the small lot size found typically within a Rural Community Plan Area;

5. The applicant's proposal complies with a goal in the Comprehensive Plan that states land within the Rural Service Area should be reserved primarily for agricultural and other natural resource uses;

\* \* \* \*

8. The Pleasant Ridge and Utica Quadrangle Maps indicate the presence of coal deposits on the site;

9. The applicant's proposed strip mining technique agrees with an objective of the Comprehensive Plan that agricultural and other natural resource uses should be given wider reign to apply traditional production techniques[.]

After the Planning Staff entered its report, the OMPC heard presentations from the applicants and their opponents. Both sides were represented by counsel and were given one hour to make their respective cases. When an opponent from the audience raised a significant issue, the Commission would question the Planning Staff on that issue.

Following the presentations, thirty-two people were granted an opportunity to speak. Six of them spoke more than once, and one individual exceeded the three-minute time limit and addressed the Commission for more than twenty-four minutes. The OMPC allowed the audience to cross-examine the applicant's representatives, the representatives who actually presented evidence in support of the zone change but did not allow direct cross-examination of the Planning Staff. Instead, interested parties were able to first direct any questions to the Chairman of the OMPC, Mr. Drew Kirkland, who then questioned the Planning Staff.

After approximately eight hours of testimony, Mr. Kirkland inquired if anyone on the Commission had any further questions. Commissioner Ward Pedley took this opportunity to state that he had conducted an independent investigation of the properties and further communicated his appreciation for coal mining based on personal experiences as an employee of the coal industry, a residential developer, and a brother of a coal lessor. Commissioner

Pedley then motioned for the OMPC to approve the zone change based on the information he provided and the factual findings of the Planning Staff. The motion passed by a vote of five to four.

On August 2, 2012, the Daviess County Fiscal Court adopted the OMPC's findings and recommendations, with some additional conditions. The Daviess County Fiscal Court then approved the zone map amendment. This decision was appealed to the Daviess Circuit Court, which entered a judgment affirming the Daviess County Fiscal Court. This appeal followed.

## II. STANDARD OF REVIEW

■■■ For zoning cases, the central question on appeal is whether the legislative body made an arbitrary decision. *Am. Beauty Homes Corp. v. Louisville and Jefferson Cty. Planning and Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky.1964). "Arbitrariness review is limited to the consideration of three basic questions: (1) whether an action was taken in excess of granted powers, (2) whether affected parties were afforded procedural due process, and (3) whether determinations are supported by substantial evidentiary support." *Hilltop Basic Res., Inc. v. Cty. of Boone*, 180 S.W.3d 464, 467 (Ky.2005). A zoning decision must be supported by substantial evidence adduced during the hearing. *City of Louisville v. McDonald*, 470 S.W.2d 173, 179 (Ky.1971). Moreover, under the residuum rule, "[t]he introduction of incompetent evidence does not warrant reversal of a factual determination, provided the tribunal's ruling is supported by competent substantial evidence." *Drummond v. Todd County Bd. of Educ.*, 349 S.W.3d 316, 325 (Ky.App.2011). Appellate courts review questions of law de novo; however, they defer "to an administrative agency's interpretation of the statutes and regulations it is charged with implement-

ing." *Commonwealth, ex rel. Stumbo v. Ky. Pub. Serv. Com'n*, 243 S.W.3d 374, 380 (Ky.App.2007). Furthermore, it is entirely permissible for the legislative body to affirmatively change a zoning classification based on appropriate findings of either the commission or the legislative body itself. *McDonald*, 470 S.W.2d at 179.

## III. DISCUSSION

In challenging the Daviess County Fiscal Court's decision as arbitrary, the appellants raise two arguments. First, the appellants argue that the Daviess County Fiscal Court improperly relied upon insufficient findings by the OMPC. Second, the appellants argue that the manner in which the OMPC conducted its hearing denied them due process of law. We disagree with the appellants with respect to both arguments.

### 1. The Daviess County Fiscal Court's decision was supported by substantial evidence

■■■ In Kentucky, Kentucky Revised Statutes ("KRS") 100.213(1) sets out the following necessary findings for a proposed zoning map amendment:

Before any map amendment is granted, the planning commission or the legislative body or fiscal court must find that the map amendment is in agreement with the adopted comprehensive plan, or, in the absence of such a finding, that one (1) or more of the following apply and such finding shall be recorded in the minutes and records of the planning commission or the legislative body or fiscal court:

(a) That the existing zoning classification given to the property is inappropriate and that the proposed zoning classification is appropriate;

(b) That there have been major changes of an economic, physical, or

social nature within the area involved which were not anticipated in the adopted comprehensive plan and which have substantially altered the basic character of such area.

Hence, "[z]oning changes are allowed if they are in accordance with the comprehensive plan." *Fritz v. Lexington–Fayette Urban Cty. Gov't*, 986 S.W.2d 456, 459 (Ky.App.1998).

 The comprehensive plan is a guide for development, as well as for economic and social well-being within the planning area. It must apply generally throughout the community and must contain "a statement of goals and objectives," a land use plan element, a transportation plan element, and a community facilities plan element. *See* KRS 100.187. The comprehensive plan must also enable investors to "determine with some degree of reasonable certainty the use to which the property can be put before it is purchased." *Hardin Cty. v. Jost*, 897 S.W.2d 592, 595 (Ky.App.1995).

 However, in determining whether a zone map amendment agrees with the comprehensive plan, zoning agencies are not required to follow every land use detail set forth in the comprehensive plan. *Warren Cty. Citizens for Managed Growth, Inc. v. Board of Com'rs of City of Bowling Green*, 207 S.W.3d 7, 16–17 (Ky.App.2006). Zoning agencies may instead base their decision on particular land use details and ignore others, as long as those relied upon are supported by substantial evidence. *Id.*

Here, mining coal from the subject properties is in agreement with the comprehensive plan. The Planning Staff recognized that the comprehensive plan generally encourages coal mining when the coal to be mined is located in the Rural Service Area. Furthermore, the Planning Staff specifically found that coal mining would promote two objectives of the comprehensive plan: (1) that land within the Rural Service Area should be reserved primarily for agricultural and other natural resource uses; and (2) that agricultural and other natural resource uses should be given wider reign to apply traditional production techniques.

These three findings are properly supported by the record. First, multiple maps, site descriptions, and soil analyses contained in the record clearly demonstrate that a majority of the subject properties overlay existing coal deposits and are located within the Rural Service Area. Thus, the comprehensive plan expressly encourages coal mining on these properties. Further, since coal is a natural resource [1] and coal mining is reasonably a natural resource use, the Planning Staff properly supported its finding as to the first objective, *supra*. And finally, because WKM clearly intends to extract the deposits via strip mining, a widespread mining practice since the middle of the twentieth century,[2] the second objective is also met.

Accordingly, the Planning Staff's findings were supported by substantial evidence, and the OMPC properly relied on them even though Commissioner Pedley's personal opinions found their way into the

---

1. Any material from nature having potential economic value or providing for the sustenance of life, such as timber, minerals, oil, water, and wildlife. NATURAL RESOURCE, Black's Law Dictionary (10th ed. 2014).

2. *See* T.J. Brandt *Kentucky Real Estate Law Survey: 1990 Through 1993*, 21 N. Ky. L.Rev.

435, 436–38 (1994) (citing *Ward v. Harding*, 860 S.W.2d 280, 287 (Ky.1993), which found that broad form deeds did not grant the right to strip mine because strip mining was not a contemplated mining method when most broad form deeds were executed in the early 1900's).

record. The Planning Staff's findings were independent of Commissioner Pedley's statements, as the former specifically addressed the proposed zone change vis-à-vis the comprehensive plan. The Daviess Fiscal Court's ultimate approval based on the OMPC's independent reliance on the Planning Staff's sufficient findings was thus proper.

### 2. The appellants were afforded procedural due process

When making a zoning decision, the legislative body must provide a party whose constitutional interest is at stake "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (internal quotations and citations omitted). But, since the legislative body is not engaging in a judicial function when deciding a zoning matter, it is not "subject to the same rules of conduct or procedure as judicial officers." *Hilltop Basic Res., Inc. v. Cty. of Boone*, 180 S.W.3d 464, 468 (Ky.2005). Typically, the legislative body must only hold a hearing, take and weigh the evidence presented, produce findings of fact "based upon a consideration of the evidence," make an order supported by substantial evidence, "and, where the party's constitutional rights are involved, [respect] a judicial review of the administrative action." *Id.* at 469. However, in zoning cases where a decision is made following a trial-type adjudicatory hearing, the parties also have the additional right to cross-examine witnesses. *Kaelin v. City of Louisville*, 643 S.W.2d 590, 591–92 (Ky.1982).

Here, the OMPC complied with each of the due process requirements set forth above. The OMPC held a hearing, allowed both sides one hour to present their evidence, and then allowed thirty-two individuals three minutes to raise additional issues. The OMPC also considered the evidence presented, and as we have already settled, supported its ultimate recommendation to approve the zone change with findings of fact based on substantial evidence in the record.

As for the appellants' claim that they were not given an opportunity to cross-examine witnesses, the record clearly shows that the OMPC cross-examined the Planning Staff and that the audience was allowed to cross-examine the applicant's representatives while they presented. Furthermore, in this non-judicial setting, Mr. Kirkland permissibly redirected the audience's concerns to the Planning Staff, which addressed them. This is an acceptable form of questioning that does not offend due process. *See Bellemeade Co. v. Priddle*, 503 S.W.2d 734, 740 (Ky.1973). Accordingly, the appellants were not denied due process of law. The decision of the Daviess Circuit Court is hereby affirmed.

ALL CONCUR.